ALBANY,
February, 1809.

Hyatt
v.
Wood.

———◦◦◦———

HYATT *against* WOOD.

If a person having a possessory title to land, enters *by force*, and turns out a person who has a naked possession only, the latter cannot maintain trespass against the person so entering, under colour of title. If a person having a legal right of entry on land, enters *by force*, though he may be indicted for a breach of the peace, yet he is not liable to a private action of trespass for damages, at the suit of the person who has no right, and is turned out of possession. Where a tenant holds over the

THIS was an action of trespass *quare clausum fregit.* The defendant pleaded *not guilty.* The trespass was alleged to be committed on lot No. 80. in the township of *Junius*, and county of *Seneca.*   The cause was tried before Mr. Justice *Spencer*, at the *Seneca* circuit, in *June*, 1808.   It was proved, that, in 1795, one *Green* lived on the lot, and began to make improvements ; and continued to reside on the lot until *March*, 1805.   The plaintiff entered into possession of the lot on the 27th *February*, 1805, under a permission from *Murray & Mumford*, of the city of *New-York*, and with the consent of *Green*, who had previously agreed to surrender up the possession to *Murray & Mumford*; and at the time the plaintiff took possession, *Green* told the witness that he consented to it, and that he was to go out on the 1st *March.*   The plaintiff was proved to be in the actual and peaceable possession of the lot until *June*, and cut hay on a part of the lot in *July*, and, while the plaintiff, with others, was mowing there, the defendant

term, and the landlord enters by force and turns him out, he cannot maintain trespass against the landlord. If the defendant, in an action of trespass *quare clausum fregit*, pleads *liberum tenementum*, the plaintiff cannot reply *de injuria sua propria*, but must traverse the title ; but if the defence be set up by way of excuse, and not in justification, then the plaintiff may reply *de injuria sua propria.*

came to the plaintiff and told him he must quit the meadow where he was mowing, and struck him with a stick. The defendant, at the same time said, that the plaintiff had possession of the lot, and that he meant to dispossess him, and that, if he could not do it by fair means, he would by his stick. The defendant claimed the meadow, and there were cattle at pasture on the lot. The plaintiff executed a lease to *Murray & Mumford*, for 450 acres, in *Junius*, for one year, from the 30th *March*, 1805. He was the only person who actually lived on the lot.

The defendant produced a deed from *Green* to him for all the right and title of *Green* to the premises in question. The deed was objected to by the plaintiff, but was admitted in evidence. It was proved, that when the deed was executed, *Green* requested permission to continue in possession until the 1st *March*, 1805, to which the defendant consented. On the 1st *March*, 1805, the defendant not being present, *Green* and his family went out of the house, and immediately returned again, and requested a person present to take notice that he gave up the possession. When this took place, *Green* removed nothing from the house, but stood at the door, and said, that he delivered up the possession to the defendant; and the plaintiff was then in the house. On the 7th *November*, 1804, *Green* gave a writing under his hand and seal to the defendant, acknowledging himself to be in possession of the improvements of lot No. 80. in *Junius*, which he had sold to the defendant, and promising to deliver up the peaceable and quiet possession of the same to the defendant, his heirs and assigns, on the 1st of *March* following. This instrument was not, in fact, executed, until two or three weeks after its date, and when it was delivered, the defendant paid *Green* 700 dollars. A witness also testified, that the plaintiff told him that he believed that *Green* had given up the possession honestly to the defendant, and that the plaintiff knew, when he came there, that the defendant had bought the property of *Green*, and that he was put into possession by *Mumford*, and that he did not consent to the defendant's taking possession; that

ALBANY,
February, 1809.

Hyatt
v.
Wood.

the plaintiff also said, that he was present when the defendant bought the farm of *Green* for 850 dollars, and that he knew the place belonged to the defendant, but that he meant to be faithful to those who put him in.

The judge said, that, unless the plaintiff consented to a nonsuit, he should charge the jury, that the evidence .pro-· duced by the defendant was sufficient to support the plea of *liberum tenementum*, and that the same might be given in evidence under the general issue. He then called the plaintiff, who submitted to a nonsuit, with leave to move for a new trial.

*Hopkins*, for the plaintiff. I agree that· *liberum tenc-· mentum* may be given in evidence under the general issue ; but I contend that there was no evidence of a freehold. The deed from *Green* to the defendant was a mere transfer of the possession, or improvements. There is no evidence that *Green* had, or pretended to have the right of property. It was the mere claim of an intruder on land, for the improvements he had made while in possession ; and the defendant's title consists only in a release to him of all *Green's* right and title to these " improvements." No interest or property in the soil was .transferred ; nor is there any covenant or warranty as to a title. It is well known to be a practice in some parts of the state, though not warranted by law, to bargain and sell these pretended claims by intruders for their improvements. The defendant had not the posses- sion, or the right of possession ; he was the mere purchaser of a claim which the law does not recognise. He had no right of entry, but was a mere intruder on the plaintiff, who was in the peaceable possession of the land, and exer- cising various acts of ownership. If the defendant had pleaded *liberum tenementum*, and that plea had been traversed, he would have been obliged to make out his freehold.

But, admitting that the defendant had a right of en- try, this could only justify a peaceable and formal entry on the land, for the purpose of vindicating his rights, and * 3 *Bl. Com.* 4, not a violent and forcible entry.* Private rights can never·
5. 174.

be asserted by force, as it may endanger the public peace. So, for the purpose of a continual claim, a person may make a formal and public entry on the land which he claims, in a peaceable manner; after which he must resort to his legal remedy. If such an entry be made by force, the party against whom the force is used may have his action for damages.[*] The statute against forcible entries and detainers was made for preventing such a violent proceeding. If a party might forcibly enter and turn out a person who is in possession, there would be no occasion for the action of ejectment. The party turned out of possession would have no remedy against him who has the title, and who has asserted it by force. There is a radical distinction between a formal entry, in order to lay the foundation for an action at law, and a forcible entry and expulsion. A *trespass* by a lessor will not suspend the rent, though an eviction or *expulsion* of the lessee may be pleaded to an action for the rent.[†]

Again, *possession* is sufficient to maintain an action of trespass. The plaintiff had a right of action against the defendant for coming on the land; yet this is inconsistent with the idea, that the defendant can have a good defence, for the same cause. The plaintiff being in possession, and claiming title, may justify an assault and battery, in defence of his possession.[‡] The title is *inducement* only to the defence, and is not material; and an *inducement* is not traversable.[§] If possession, then, will justify an assault and battery in defence of it, it follows, that the plaintiff cannot justify his entry or trespass: for it is absurd to say, that the attack and defence are both justifiable.

Can any one enter and expel another, except the person who could have maintained trespass? A disseisee cannot maintain trespass, except for the actual disseisin, until after a re-entry.[¶] The defendant may plead *liberum tenementum* in justification of a formal and peaceable entry; but not where there is *force*. Every trespass is stated to be *vi et armis;* but the defendant may justify as to the entry, that it was peaceable, and traverse any other *force* alleged.

ALBANY,
February, 1809.

Hyatt
v.
Wood.

[*] *Litt.* s. 431. But see *note* 1. by *Hargrave.*

[†] *Saund.* 204. note (2). *Bull. N. P.* 165—177. *Cowp.* 243.

[‡] *Cro. Car.* 138. *Shevill* v. *Avery.*

[§] 1 Ld. *Raym.* 134. 3 *Term Rep.* 643.

[¶] *Bull. N. P.* 87. 11 *Co.* 51. 56. 3 *Bl. Com.* 209, 210.

The plaintiff ought not to have been nonsuited, for it was a fact for the jury to decide, whether there was more force used, than was necessary to make a formal entry on the land.

*T. A. Emmet* and *Riker*, contra. It is admitted, that a freehold may be given in evidence under the general issue, but it is objected, that the defendant has not shown a freehold. The defendant was in, under *Green's* title; and *Green* was proved to have been in possession from 1795, claiming the land as his own. Possession is *prima facie* evidence of a fee;* and all persons in possession are, *prima facie*, capable of conveying. The deed is to the defendant, his heirs, and assigns; this, accompanied by possession, is presumptive evidence of a fee, unless a minor title is shown.

* 2 *Bl. Com.* 290.

The possession of the plaintiff was not an *adverse* possession,† for he obtained it by permission of *Green*. As the plaintiff came into possession with the consent of *Green*, who was the tenant of the defendant, he can be considered in no other light, than as a tenant at sufferance. If the plaintiff was a tenant at sufferance, the defendant had a right to enter upon him.‡ A person who has a title or right of entry on land may enter with force, provided it is not with that degree of force which would amount to an indictable offence. A person cannot be indicted for a bare trespass, though stated to be *vi et armis*. Indictments under the statute against forcible entries and detainers, have been frequently quashed, where there was no evil or malicious intent, and the force used was moderate.§ *Blackstone* compares the right of entry on land, by the real owner, to the right of recaption of personal property. A person may retake his own property *by force*; and though he may be liable for a breach of the peace, yet no action of trespass lies; and if the person who enters by force, has a good title, no action of trespass will lie. Not a precedent can be found for an action of trespass in such

† *Runnington*, 60, 61. *Buller*, *N. P.* 104.

‡ *Wilde* v. *Cantillon*, 1 *Johns. Cases*, 123.

§ 3 *Burr.* 1698, 1706, 1707. 1731. 1 *Caines*, 125. 2 *Caines*, 98.

à case. To maintain trespass, there must be not only a possession, but a *lawful* possession.* A lessee at will cannot maintain this action against one who enters under colour of title. At common law, before the statute of 5 *Richard* II. a party disseised might recover his possession by *force;* and the statute of 15 *Richard* II. relative to forcible entries, from which our statute is taken, requires a particular mode of proceeding.† If the party who has the right, gains possession by force, still he will hold the possession, unless the party dispossessed proceeds under the statute, and obtains a restitution ; and unless the party proceeds within three years, he cannot have the benefit of a restitution. And since the statute, in an action of forcible entry, if the defendant shows a title which is found for him, all inquiry as to the *force* is dismissed.‡

Wherever a title is pleaded, there is an end to the question about possession, and the issue is on the mere title. A freehold may be given in evidence under the general issue ; and every thing, on the contrary, may be given in evidence, which might be replied to that plea. Then, what can be replied to a plea of freehold? There are three ways of replying to such a plea : 1. A general traverse. 2. If the plaintiff derives title under the defendant's freehold, he must admit the freehold pleaded, but insist on a lease, or some title under the defendant, who must then traverse the replication ; or, 3. Without either confessing or denying the plea, the plaintiff may reply a title derived from a third person, and inconsistent with that of the defendant.§ On a traverse of the plea of freehold, no question, but that of title, can be discussed ; a possession cannot be given in evidence, or pleaded.¶ Here no title was replied, but a bare possession. The judge was, therefore, right in directing a nonsuit.

*Hopkins,* in reply, observed, that though a tenant at sufferance might be turned out by the landlord, or owner, yet a person in possession, and claiming title, could not be turned out by force ; for, if this could be done in the case

ALBANY,
February, 1809.

Hyatt
v.
Wood.

* 6 *Bac. Abr.* 566, 567. *Trespass,* (c) 3. 2 *Hawk.* 29. c. 64. s. 1, 2, 3. *Dalt. Sheriff.* c. 129.
† *Co. Litt.* 257. a. *note* 1. by *Hargrave.*

‡ 2 *Hawk.* c. 64. s. 3.

§ *Willes's Rep.* 225. *Lambert* v. *Stroother.*

¶ *Cro. Car.* 123. *Strange,* 1238.

of a possession for five years, it might, also, be done where there was a possession for 20 years. Such a doctrine would be found very inconvenient and injurious in practice. But, allowing a *formal and peaceable* entry, in order to found an ejectment to try the right, removes all difficulties. He cited 9 *Wentw. Pleadings*, 49, &c. 102. 118. 123. 133. 251. 266. 324. 326. for forms of pleadings in similar cases. Though *de injuria sua propria* cannot be replied as to the title, yet it may be replied as to the force and other wrongs.*

* *Lawes*, 154. 157.

SPENCER, J. delivered the opinion of the court. It is essential to consider, in the first place, the rights of the parties in the premises. The plaintiff entered under *Murray & Mumford*, and also by the permission of *Green*, and whilst he was in possession. *Murray & Mumford* appear to have no title to the lot, for none is shown. *Green* is the only person who appears to have had any interest in it, and that is a possession for nearly ten years. As against all but the rightful owner, *Green's* possessory interest must prevail. By the deed of the 7th of *November*, 1804, the defendant became clothed with all *Green's* right, of whatsoever kind it might be ; and, by the instrument of that date, *Green* acknowledged that he held the improvements sold to the defendant, and promised to yield up possession to the defendant on the 1st of *March* after. Thus *Green* virtually became the tenant of the defendant, until the first of *March*, and, after that day, he became a tenant at sufferance.† Tenancy at sufferance is defined by *Blackstone* to exist, where one comes into possession of land, but keeps it afterwards, without any title at all. In the present case, the continuance of *Green* in possession, after his sale to the defendant, under an agreement to yield it up on a precise day, brings him within the spirit of this definition ; and his remaining in, after the 1st of *March*, was without any title, and, consequently, he must, from that period, be regarded as in by the sufferance of the defendant. It is a most salutary principle, that a person holding the possession of lands for another, cannot, by his fraudulent acts in derogation of the rights of

† 2 *Bl. Com.* 150.

the landlord, change or controul those rights. It is evident, in this case, that the plaintiff did acquire his possession by the connivance of *Green*, and with a view, on the part of both, to defeat the defendant's possessory title, acquired at an anterior period, for a valuable consideration, and *bona fide*. It is also apparent to me, that the plaintiff's title, under *Murray & Mumford*, is merely colourable, and that he, in fact, gained nothing from them ; and that the plaintiff must be considered as having acquired his possession under *Green*. Consequently, he stands precisely in his place, and must be regarded as a tenant at sufferance, since he entered before the 1st of *March*, by *Green's* permission, and continued in after *Green's* right to the possession was at an end. If this view of the subject be correct, as it appears to me to be, then the case of *Wilde* v. *Cantillon*[*] is in point. It was, in that case, determined by this court, that a tenant at sufferance could not maintain trespass against his landlord ; for, as against him, he has no legal right of possession on which to found the action. If, however, the plaintiff is not to be regarded as a tenant at sufferance, still I think the nonsuit was correct. Trespass is a possessory action, founded merely on the possession, and it is not at all necessary that the right should come in question.[†] If, therefore, the defendant can show himself entitled to the land itself, or to the possession, he cannot be rendered responsible to a person having neither a right to the land, nor to the possession. In this case it cannot be pretended, that the plaintiff has any right or interest in the land, or the possession. He has certainly nothing more than a naked possession ; whereas the defendant is clothed with *Green's* title, which is a possessory title of at least nearly ten years standing. It may be laid down as an axiom, that no man can recover upon a claim of right to property against another, whose rights to the subject matter are superior to those of the person so claiming damages for a violation of his supposed rights. At common law, and prior to the statutes to prevent forcible entries, wherever a right of entry existed, the disseisee might lawfully regain the posses-

[*] 1 *Johns. Cases*, 123.

[†] *Willes's Rep.* 221.

* 2 Hawk. c. 64.

† 3 Term Rep.
292.
3 Bl. Com. 174.

‡ 1 Johns. Rep.
45.

§ 7 Term Rep.
431.

¶ Runnington,
60, 61.
Dalt. c. 129.

sion by force.* In a case, bearing analogy to the present, of personal property, the right of recaption exists, with the caution that it be not exercised riotously, or by a breach of the peace; for should these accompany the act, the party would then be answerable criminally; but the riot or force would not confer a right on a person who had none, nor would they subject the owner of the chattel to a restoration of it to one who was not the owner. With respect to real property, the owner, having a right of entry, may, since the statutes, enter peaceably upon one who is in possession without right, by the very terms of those statutes.† If the entry in such case be with a strong hand, or a multitude of people, it is an offence, for which the party entering must answer criminally, but it would be an absurdity to say, that he must also be responsible in damages, as for an injury to the person who has no right, but is himself a wrong doer, in consequence of his illegal entry. In the case of *M'Dou-gal* v. *Sitcher* and another,‡ the entry was considered peaceable, and therefore justifiable on the part of the owner; but Mr. Justice *Livingston*, in delivering the opinion of the court, very justly observed, that if the entry had been by breach of the peace, the defendants might, perhaps, have been indicted, but this would not have rendered the defendants trespassers against a party who had no longer any interest in the *locus in quo*. In the case of *Taunton* v. *Costar*,§ the defendant, who was a tenant from year to year, held over, after proper notice to quit, and the landlord entered upon him, Lord *Kenyon* observed, that the case was too plain for argument. " If, indeed," said his lordship, " the landlord had entered with a strong hand to dispossess the tenant by force, he might have been indicted for a forcible entry; but there can be no doubt of his right to enter upon the land at the expiration of the term." The same principle is recognised by *Runnington* and *Dalton*.¶ I am warranted, therefore, in concluding, that, though the statutes of forcible entry and detainer have so far altered the common law, as to render persons having a right of entry, indictable as for breach of the peace, in entering for-

ALBANY,
February, 1809.

Hyatt
v.
Wood.

. cibly, yet, as respects the civil remedy, it remains, as it was before the passing of the statutes; and, consequently, where the party entering has a right to the possession, he cannot be made answerable in damages, to a party who has no right, and is himself a *tort-feasor.* If other considerations were necessary to illustrate the correctness of this position, they would be found by a reference to the pleadings in actions of trespass. It cannot, I think, be controverted, that if, in an action of trespass *quarè clausum fregit,* the defendant shall plead *liberum tenementum,*\* the plaintiff must either traverse the title set up, or, by a replication admitting the source of the derivative title, state a title in himself paramount to that of the defendant; but in no case where the defendant sets up a title, can the plaintiff reply *de injuria sua propria* alone.† If the defence set up be matter of excuse, as contradistinguished from matter of justification, then a replication *de injuria sua propria* puts the excuse in issue.

If, in trespass, the plaintiff might admit the title, and go for the force, there would be found some precedent of such pleadings; and the want of such a precedent is a strong argument against the plaintiff's recovering, in the present case, for acts done by a person who has the best possessory title.

I have hitherto considered the defendant as having entered on the plaintiff's possession with force. The facts do not warrant the idea, that there was an assault and battery committed on the plaintiff, but this act surely would not naturally produce a dispossession. For aught I see, the entry was peaceable; but if it were otherwise, on principle, I think the defendant has done no wrong to the plaintiff's rights, for he had none. It has been strongly urged, that this doctrine tends to tumult and violence, which the law ought not to countenance; but sufficient restraints will be found in the remedy by indictment, and in the liberality with which jurors will give damages where a wrong-doer undertakes to enter without right. In one point of view, the doctrine is salutary, inasmuch as it will lessen the inducements, afforded

* 5 Johns. Rep.
239.

by legal delays, to the unjust acquisition of the possession of real property. But with arguments *ab inconvenienti*, the court has no concern, if the law is, as I think it to be, so settled. It was supposed, that the decision of this court, in a case between the same parties,* had, in effect, decided the present question ; but, by reference to that case, it will be seen, that the only point there was, whether it was proper to grant a new trial in an action for an assault and battery, where, at all events, the damages must be small. The court do say, in that case, that the principle stated by the judge was incorrect ; but, admitting it to be so in that case, it is a *non sequitur*, that, in an action for a redress of a supposed injury to the property itself, it would also be incorrect. The judge there stated, that a party having the right of possession, had a right to enter on the party in possession, and use such force as was necessary to expel him. Very different considerations are applicable to an action for an assault and battery, and an action of trespass *quare clausum fregit.* In an action for the personal injury, the defendant, who is not in possession, cannot justify an entry and the exercise of personal violence ; but in an action for an injury to the land itself, he may justify the force as respects the possession. In every point of view in which this case can be considered, I remain of the opinion, that the nonsuit was right ; and such is the opinion of the court.

Rule refused.