ISABELLA DRAPER, Respondent, *v.* JOSEPH STOUVENEL, Appellant.

The object of the statutes of 1848 and 1849 was to divest the title of the husband, *jure mariti*, during coverture, and to enable the wife to take the absolute title to property as though she were unmarried.

Prior to the statute of 1860 (ch. 90, § 7, p. 158), a married woman could not render herself personally liable for rent; but if the lessor was willing to assume the risk, the lease taken by the wife would be valid, and no estate would pass to her husband.

Where the action concerns the separate property of the wife, it is properly brought in her name alone.

APPEAL from a judgment of the Superior Court of the city of New York, affirming a judgment rendered upon a verdict in favor of the plaintiff.

The action was brought in January, 1858, to recover for injuries, by force, to both real estate and personal property. It appeared, on the trial before BOSWORTH, Ch. J., and a jury, in November, 1859, that, on and prior to the 7th of July, 1857, the plaintiff was in possession of the dwelling part of houses Nos. 565 and 567 Broadway and No. 86 Prince street, in the city of New York, which were connected together, and were occupied by her as a boarding house. She had therein a large amount of household furniture and other personal property, which had been purchased in her name, and used in the business. The premises were originally leased to Joseph Earle, and the plaintiff occupied, as the sub-tenant of Earle, from the commencement of his term to the 1st of May, 1855. The first lease to Earle was of No. 567 Broadway and No. 86 Prince street, for the term of one year, from May 1, 1854, at a rent of $2,500 a year, payable quarterly, and renewable for four years more, at an annual rent of $3,000. The lease was executed by the defendant and Francis and Nicholas Stouvenel, doing business under the name and firm of Stouvenel & Co. Subsequently, it was modified so as to make the rent payable for the second year, $2,500; for the third year, $2,650; and for the remaining two years, $2,800 each; and, by the

election of Earle, the lease was continued on the modified terms for the whole period of five years.  On the 1st of May, 1855, the defendant and Francis Doubet, doing business under the name and firm of Stouvenel & Doubet, leased to Earle No. 565 Broadway, for the term of four years, at a rent of $1,700, payable quarterly; making the aggregate rents payable by Earle, for the second year of the term, $4,200 ; for the third year, $4,350; and for the last two years (from May, 1847, to May, 1849), $4,500 *per annum.*  Earle was also to pay the corporation charge for the Croton water.  During the first two years, the plaintiff paid the rent to Earle, and in February, 1856, she paid him the rent in full to May 1st, in that year.  The testimony tends to show that, after that payment was made, the plaintiff told the defendant and Earle that she was going to leave the premises, and the defendant, having expressed himself dissatisfied with Earle and the security he had given for rent, proposed to the plaintiff that she should remain and become his tenant.  About that time, the defendant assumed to himself the name and character of lessor for both premises, and thereafter the names of Francis and Nicholas Stouvenel and Francis Doubet were not known in the transactions of the parties.  On the 21st of March, 1856, the plaintiff was substituted for Earle as tenant of the premises under the defendant.  This was effected by the execution of the following instruments : 1. An assignment by Earle to the plaintiff of both leases; 2. A chattel mortgage executed by the plaintiff to Earle upon certain furniture and other personal property then in said boarding house, mentioned in a schedule thereto annexed, and being the same described in the complaint, conditioned for the payment of $4,200, with interest, on demand; 3. An agreement, dated the said 21st of March, signed by Earle and the defendant, and by them delivered to the plaintiff, whereby, after reciting the execution of said chattel mortgage, and stating that its object was to secure the payment of $4,200, in quarterly payments of $1,050, beginning on the first day of August then next, and that it was the purpose of Earle to transfer said mortgage to the defendant, they, the said Earle and the defendant, agreed

with the plaintiff that said mortgage should not be foreclosed nor the plaintiff disturbed in the possession of said furniture, at any time during the continuance of the lease, unless she should be in default in the payment of an amount exceeding six hundred dollars. In the margin of the agreement, and forming part of it, was a provision in these words: "In case of any other mortgage given by Isabella Draper, and foreclosed by the mortgagee, then it is hereby agreed that the said mortgage to Joseph Earle shall come in first; and said Earle is to be allowed to foreclose for his own protection." On the 2d of August, 1856, the plaintiff paid the defendant $450, leaving unpaid $600 of the rent of the first quarter. On the 1st of November, 1856, she paid him $1,050 for the rent of the quarter ending that day, and $10.50, as interest for three months on the $600 in arrear. The same amount was paid February 1, 1857. On the 1st of May, 1857, the plaintiff paid $550; 12th of May, $300; and 27th of May, $210.50, for one quarter's rent and interest on $600.

On the 6th of July, 1857, a fire occurred, by which the premises and a part of the furniture therein were somewhat injured, as the evidence tends to show, and, on the 7th of July, the defendant took possession of the premises, and of the furniture, placed an officer and his assistant in charge thereof, and, in fact, put an end to the plaintiff's business, and excluded her from the premises, except No. 565 Broadway, in which he permitted her to remain with her two daughters until the officers sold the personal property, in the early part of August. It also appeared that Nathaniel Jarvis, Jr., held a chattel mortgage, executed by the plaintiff, dated the 3d of July, 1854, to secure the payment of $237.50, with interest, on demand. It covered personal property in said premises, but not the same property included in the Earle mortgage. After the fire, Jarvis gave his mortgage to the defendant to foreclose, or to take care of, in case he foreclosed his own, and the defendant thereupon took possession of the furniture and premises, as above stated, and gave the officers directions not to proceed under his mortgage till after the 1st of August.

The plaintiff was a married woman, but she lived apart from her husband, and carried on the business in her own name. On the 20th of July, 1857, she executed a bill of sale of all her interest in the property then in said premises to Charles Matthews, for the expressed consideration of $800. Her husband, by a separate instrument, dated two days later, released his interest in the same property to Matthews for a nominal consideration.

There was some evidence to show that, after the 1st of August, the plaintiff was dispossessed by warrant in summary proceedings for non-payment of rent. Much testimony was introduced on both sides as to the value of the lease and of the personal property. When the plaintiff rested, the defendant's counsel moved to dismiss the complaint, and for a nonsuit, on the ground that the plaintiff was a married woman. The motion was denied, and the defendant excepted. Various exceptions were taken to rulings upon questions of evidence.

The judge charged the jury, in substance, that the agreement explanatory of the chattel mortgage provided that the plaintiff should not be disturbed in the possession of the property, while not in default to an amount exceeding $600; that if Jarvis authorized the foreclosure of his mortgage, the proceedings having been taken, the defendant had a right to enter the premises and take the property set out in his mortgage; but that neither he nor Jarvis had any right to remain on the premises and sell the property, and if they did so, without the plaintiff's consent, she was entitled to recover reasonable damages for such interference with her possession, but not for the damages arising from the presence or interference of the fire marshal or his men; that the defendant had no right to enter by force, and without process, under the leases, for condition broken, because, though the rent may have been in arrear for more than $600, the forfeiture was waived by his subsequent reception of rent and interest upon rent in arrear; that if the plaintiff was turned out of possession by warrant in summary proceedings for non-payment of rent, after the 1st of August, she cannot

recover for the use of the premises, or loss of the leases, thereafter; that if any articles of furniture, not in the mortgage, were taken without the plaintiff's consent, she was entitled to recover their value; that if she sold all the furniture to Matthews after it was seized, and he took it under that sale, her only claim against the defendant for damages to property, not covered by the mortgage, would be the loss caused by her being deprived of possession from the time it was seized till it was sold to Matthews, and for damages actually done it during that period, and that for taking such articles as the mortgage covered there could be no claim for damages; and that if the property taken by virtue of the Earle mortgage was duly advertised and published, and publicly sold, the defendant was not answerable for any value beyond the price it sold for.

No exception was taken to the charge; but the defendant's counsel requested the judge to charge, in substance, that there was no waiver, by defendant, of the forfeiture by reason of rent in arrear, and he had a right to enter, on the 7th of July, without process of law, provided he did so without a breach of the peace. The judge declined so to charge, and the defendant's counsel excepted.

The jury found a verdict for the plaintiff for $1,220 damages. The judgment entered thereon was affirmed at General Term, and the defendant has appealed to this court. The case is submitted on printed points.

*S. B. H. Judah*, for the appellant.

*Truman Smith*, for the respondent.

SMITH, J.    The principal question in this case is that raised by the motion for a nonsuit, on the ground of the coverture of the plaintiff.

As the transactions in controversy occurred before the statute of 1860 (Laws of 1860, ch. 90, § 7, p. 158), the counsel for the defendant claims, first, that, by reason of the coverture of the plaintiff, the leases assigned to her became the property of her husband, they being chattels real, and the per-

sonal property, which she acquired and used in her business, also belonged to her husband, and was liable for his debts; and, secondly, that if the plaintiff had an interest in the premises and furniture, she could not maintain this action without joining her husband, the right of recovery being in him. The first of these positions is shown to be untenable, by the course of reasoning adopted by this court in the case of *Knapp* v. *Smith* (27 N. Y., 279).

At common law, a married woman could take the title to real or personal property, by conveyance, from any person except her husband. But, where no trust was created, her personal property vested in her husband, absolutely, when reduced to his possession, and he became possessed of her chattels real, in her right, with power to alien them at his pleasure during her life, and if he survived her, they became his, absolutely. The object of the statutes of 1848 and 1849 was to divest the title of the husband, *jure mariti*, during coverture, and enable the wife to take the absolute title as though she were unmarried. (Laws of 1849, p. 528, ch. 375, § 1.) Mrs. Draper, by taking the assignment from Earle of his leases, and being substituted in his place, with the consent of his landlord, became the lessee of the premises, and her husband had no right or interest therein. Her subsequent possession of the same was in her own right, and if any injury was done to the possession, the right of action therefor belonged to her. It is true that, under those statutes, a married woman could not become personally liable for the payment of rent, since they did not abrogate the general rule of law, that a *feme covert* cannot bind herself, personally, by contract, for payment, but, if the lessor will assume the risk of being able to obtain payment of the rent, the lease will be valid, and no estate will pass to the husband. And, although she will not be bound, personally, by her agreement, to pay rent, yet the conditions of the lease will be valid, and the landlord may avail himself of the right of reëntry, reserved in case of a breach of the conditions. It is clear, therefore, that the husband had no interest in the premises leased to his wife. It is equally clear that he had no title to the personal property

in her possession. She commenced the business of keeping a boarding house in 1854. At that time she had no means, except $2,000, which she borrowed of her daughter. The furniture and other personal property was purchased by her, either with the means thus borrowed, with her earnings in the business, or upon her individual credit. In either case it belonged to her, absolutely, and was not subject to the control of her husband, or liable for his debts. She lived apart from her husband — with her daughters — and, for aught that appears, was deserted by him, and left to her own exertions for support. He had no agency or coöperation in the business. He furnished no means, directly or indirectly, to carry it on. The leasehold title to the premises, where the business was conducted, was hers, absolutely, as has been seen, and the business was managed by her, in her own name, and with her own means. Under these circumstances, her earnings in the business belonged, not to her husband, but to herself, they being the "issues and profits" of her separate estate, and, as such, coming within the express terms of the statute of 1849, by which an absolute title is vested in the wife. Even if the business had been managed by the husband, personally, under her employment, as her agent, she would have been entitled to its avails, in the absence of an intent to defraud his creditors. (*Knapp* v. *Smith, supra.*) The appellant's counsel assumes that the chattel mortgage, executed by Mrs. Draper, is void, for want of capacity in her to make it; but it is, undoubtedly, valid, as a conditional transfer of title, under the act of 1849, which authorizes a married woman to "convey" her real and personal property, and "any interest" or estate therein, in the same manner and with like effect as if she were unmarried.

As the action concerns the separate property of Mrs. Draper, it was properly brought in her name alone, and without the intervention of a guardian or next friend. (Code, § 114, as amended in 1857.)

I have carefully examined the points involved in the several exceptions taken by the defendant's counsel to rulings

TIFFANY — VOL. VIII.     65

of the judge upon questions of evidence, and am of opinion that they have no merit.

The judge properly refused to charge the jury that the landlord had a right to enter forcibly before the 1st of August, on the ground that there was then rent in arrear. He had previously instructed the jury that the defendant had no right to enter under the leases for condition broken, because, though the rent may have been in arrear for more than $600, yet the subsequent reception of rent by the defendant, and of interest upon the rent in arrear, waived the forfeiture, and a subsequent entry, by force and without due process of law, was unlawful. This part of the charge was not excepted to (indeed no exception was taken to the charge, or any part of it), and, upon the facts assumed, the jury, undoubtedly, would have been warranted in finding that the defendant had waived the forfeiture, if that question had been left to them. If the defendant wished to have that point, or any of the facts which were assumed by the judge, submitted to the jury, he should have made a request to that effect, or, at least, should have excepted to the charge, on the specific ground that it assumed to decide questions of fact, instead of leaving them to the jury.

Upon the facts assumed, the proposition of law laid down by the judge was unexceptionable, and, consequently, the request of the defendant was properly refused.

It is by no means clear that the alleged waiver was essential to the plaintiff's right to recover. It is, at least, questionable whether the forcible entry of the defendant upon the actual possession of the plaintiff, even if the latter was in default and holding over, was not unlawful, and a trespass for which an action will lie. I am aware that there are several cases in the Supreme Court of this State, holding that a landlord, who has only used such force as was necessary to expel a tenant, holding over, would be protected against an action for damages (*Hyatt* v. *Wood*, 4 Johns., 150 ; *Ives* v. *Ives*, 13 id., 235); but, in a later case, the same court has characterized the rule as "harsh, and tending to the public disturbance and individual conflict" (9 Wend., 201); and

there are well-considered decisions the other way in many of the sister States, and in England. (11 Pick., 379; 24 Maine, 242; 23 Verm., 635; 1 Man. & Gr., 644, and other cases cited in 6 Am. Law Reg., N. S., No. 2, Dec., 1866, p. 104.) The point has never been decided by the court of last resort in this State. If it were material to the decision of the case, I should be disposed to hold that the forcible entry of the defendant upon the possession of the plaintiff was unlawful and a trespass, even if the plaintiff was then in default for the non-payment of rent, and the default had not been waived. But it is not necessary to decide that point, as it is clear, upon the grounds already considered, that the judgment should be affirmed.

All the judges concurring,

Judgment affirmed.