### GEORGE B. STEARNS and wife *vs.* GEORGE SAMPSON.

*Tenancy—termination of—right of landlord to enter and expel tenant. Assault of tenant by landlord—what will not support allegation of.*

When a tenancy has been legally terminated by the landlord, he may peaceably enter the premises, whether he disclose or conceal his intentions of entering to be for the purpose of removing the tenant.

After such entry he may remove the tenant, using such force as will sustain a plea of *molliter manus*.

And in such case, if the tenant, after a reasonable opportunity therefor, neglects to remove his goods, the landlord may remove and deposit them, with due care, in some near and convenient place.

A declaration, alleging that the defendant, with force and arms, committed an assault upon the female plaintiff, is not sustained by evidence; that the defendant, a reasonable time after terminating the plaintiffs' tenancy, peaceably

entered the premises, requested the pl aintiffs to quit, and remove their furniture, and upon their refusal, burst open an inner door, which she wrongfully fastened, and refused to open, took off the doors and windows on a cold day in winter, brought a blood-hound into the house, made a great noise in the premises for several days, and refused to permit any food to be furnished to her from the outside.

ON EXCEPTIONS, AND MOTION to set aside the verdict as being against law.

TRESPASS.

The writ contained three counts; one for breaking and entering the plaintiffs' close and carrying away the household furniture; the second, for taking and carrying away the household furniture of the wife; and the third, for assault on the wife.

There was evidence, tending to show that the plaintiffs had been in the peaceable possession of the premises in controversy for more than twenty years; that the defendant received the legal title in September, 1869; that the husband plaintiff, being absent most of the time, the defendant had an interview with the wife, informing her of his title, and asking her how long before she would be ready to leave, to which she replied, that "it would take her four weeks;" that the defendant told her the purpose for which he bought it, and asked her if he could commence repairs on the outside without disturbing her, to which she gave her consent; that defendant's workmen erected stagings about the third week in October; that the husband notified defendant to remove stagings; that the defendant caused a notice, to terminate plaintiffs' tenancy, to be made and served about October 25th; that the defendant consulted eminent legal counsel and followed their directions generally.

The mode of entering into the house will be found in the opinion detailed by each party.

There was evidence tending to show that after entry and notice to leave, and refusal by the wife and her mother, with an expressed determination on their part to hold possession against the defendant, the latter called in assistants and ordered them to remove the furniture, and they did remove it from some of the rooms; that

upon going to one of the rooms, the door was fastened and the assistants opened it; that the furniture, except bed, was removed from Mrs. Stearns' sleeping-room.

That the assistants remained there several days and nights.

That the defendant caused the windows to be removed; prevented food from being carried to the house; that a tenant was let into the L of the house, and had charge of the defendant's bloodhound, five months old, and permitted him to go into the house; that the furniture was removed into a house near by, and Mrs. Stearns notified of its whereabouts; that the doors fastened by Mrs. Stearns were removed; that Mrs. Stearns finally left by compulsion with an officer, and was sick several weeks.

The rulings sufficiently appear in the opinion.

The jury returned a verdict for the plaintiffs, and the defendant alleged exceptions and also filed motions to set aside the verdict as being against law and the weight of evidence.

*J. W. Bradbury & L. Clay*, for the plaintiffs.

*A. Libbey*, for the defendant.

APPLETON, C. J.   The writ in this case contains three counts,— for trespass *quare clausum*, for an assault and battery upon the female plaintiff, and for taking and carrying away her goods.

The presiding justice, in his charge to the jury, assumed that the legal title to the premises upon which the alleged trespasses were committed, was in the defendant; that George B. Stearns had been a tenant therein; that the defendant had given him legal notice to quit; that his tenancy had been terminated, and that he thenceforth became a tenant at sufferance.

The defendant, these facts being unquestioned, after having given the plaintiff ample time in which to remove his goods and family, on the ninth of December entered into the premises in controversy, which had been and were then occupied by the plaintiffs.   The plaintiffs' witness, Mrs. Best, gives the following account of the defendant's entry:  "December ninth, as I was

passing through the entry, the bell rang. I opened the door. Being in my morning dress, I apologized. Mr. Owen was with Mr. Sampson; he introduced him to me. Without my asking him, he stepped in, and then into the parlor and asked for mother. I went and called her, and then went to my room to my baby. She soon called me. Mother said, Mr. Sampson has come to move the furniture. Owen went into the parlor. Mother was then in the parlor. Mr. Sampson said he had come to clear the house, and for us to leave at once," etc.

The defendant's testimony on this point was as follows: " On the 9th December, I went to the house with Mr. Owen, and rang the door-bell. Mrs. Best came to the door and invited Mr. Owen and myself into the house, and showed us into the south-west parlor. I asked for Mrs. Stearns, and she called her. Mrs. Stearns came in five minutes perhaps, or a little more. I then said to her I had come to take possession of the house; that I had consulted Mr. Paine and Mr. Sewall, and that they had told me to come to the house and take possession of it. She remonstrated," etc.

Now what, after this entry, were the relations of the parties? The defendant had, without force or violence, entered into his own house, in which the plaintiffs, their tenancy having been legally terminated, still remained? What were the respective rights and duties of the parties? The plaintiffs without title, their tenancy duly terminated, were there without right. Their continued possession was wrongful. The defendant was there by right in the possession of his own estate, having entered peaceably and without resistance on the part of the wrong-doing tenant. Both cannot rightfully remain. One or the other should quit. Can there be any doubt whose duty it was to leave. If the defendant could rightfully remain, the continued occupation of the plaintiffs was wrongful; as the plaintiffs could not rightfully remain, and the defendant could, and as one should quit, if he failed to quit voluntarily, there remained only the right of removal.

That right would be the same as where any person, having entered a dwelling-house, refuses to quit when requested. If there

is not this right of removal, then any knave may enter, remain, and refuse to quit, and there is no mode of dispossession. It is true every man's house is his castle. But his neighbor's house, where he has no legal right to be, is not his castle. The owner, in his castle, may remain, for it is his castle. The trespasser, in his neighbor's castle, must remove or be removed. If it be not so, the rights of the wrong-doer are equivalent to those of the owner, rightfully in possession of his own.

The facts as to the entry on 9th December were not in dispute. Upon these facts, the presiding justice instructed the jury as follows: "There is no controversy, that if he (the defendant) had obtained peaceful possession, he had a right to remain there, the property being his at the time. But what was the nature of his possession? Did he go there for the purpose of deception, merely to call as a friend on a visit, or did he go there with the intention, after making such an entry, to forcibly expel the inmates? If that was his design, then the entry would not be recognized, in law, to give him a peaceable possession." As the defendant had a right to enter peaceably into his own house, and being there to remain, and to remove the tenant wrongfully remaining, it does not affect the rights of the parties, whether he disclosed or concealed his intention to remove his tenant. Nor is it material whether he entered with such intention, or formed such intention after his entry, if his entry was peaceable, and without force. "It is not necessary," remarks Lord Tenterden, in Butcher v. Butcher, 7 B. & C. 399, 14 E. C. L. 59, "that the party, who makes the entry, should declare that he enters to take possession; it is sufficient, if he does any act to show his intention." In the same case, Bailey, J., says, "I think that a party, having a right to the land, acquires by entry the lawful possession of it, and may maintain trespass against any person, who being in possession at the time of his entry, wrongfully continues upon the land." The defendant might instantly bring trespass against the plaintiff, wrongfully remaining in his house, or he might remove her. As the law gave him a right to enter peaceably and remove his tenants and their goods, if it could be

done without a breach of the peace, the intention to do what the law authorizes, cannot make an entry with such intent wrongful.

The first branch of the instruction was correct. The verdict should be set aside as against law, the evidence on both sides showing the entry to have been peaceable.

If there is any evidence, to which the latter part of the instructions can apply, then the exceptions should be sustained; for a peaceable entry cannot be metamorphosed into a forcible one, by reason of an existing and concealed intention on the part of the party entering to do, after entry, what by law he was legally authorized to do.

The court instructed the jury that the plaintiffs could not recover on the count for breaking and entering. The defendant entering upon premises wrongfully withheld by the tenant, could not be deemed a trespasser. But if he was not a trespasser in entering into his own house, whatever his purpose or intention, then, being there, he might remove doors or windows. If the plaintiffs could not maintain trespass *quare clausum* for his entry, neither could they for his acts after such entry. *Meader* v. *Stone*, 7 Pick. 147. "The right of the plaintiffs to the possession of the house had terminated by their failure to pay rent, and the notice given to them by the defendant to quit the same. In this state of the facts," observes Dewey, J., in *Mugford* v. *Richardson*, 6 Allen, 76, "the defendant had the right to enter upon the premises and take out the windows of the same. . . . Being thus in peaceable possession of a portion of the tenement, the court properly instructed the jury that if the female plaintiff undertook to prevent him from taking out the windows, he had the right to use as much force as was necessary in order to overcome her resistance." In *Harris* v. *Gillingham*, 6 N. H. 11, the owner of the land, after requesting his tenant to leave, upon his refusal entered, tore down the chimneys and put the building in an uninhabitable condition, for doing which the tenant brought an action of trespass *quare clausum*. "We are of opinion," say the court, in delivering their opinion, "that the disturbance done to her possession, by putting the house in a situ-

ation which compelled her to leave it, did not make them trespass-
ers *ab initio*, because she had no right to be there against the will
of D. Gillingham, the owner of the land.  *Erwin* v. *Olmstead*, 7
Cow. 229; *Wilde* v. *Contillac*, 1 Johns. Cases; *Hyatt* v. *Wood*, 4
Johns. 150; *Ives* v. *Ives*, 13 Johns. 235."

Neither can the acts complained of be deemed to constitute an
assault upon the female plaintiff.  As they were acts the defendant
could legally do, they cannot become the basis of a suit or a foun-
dation for a claim for damages.

The right of the plaintiffs to occupy having been legally termin-
ated, they would have a reasonable time in which to remove their
goods, after which the landlord might enter and remove them,
storing them safely near by, provided it were done in a careful
manner.  *Rollins* v. *Mooers*, 25 Maine, 192.  In case of a mort-
gage, the entry may be made by the mortgagee, before condition
broken, without the consent and against the will of the mortgager,
and the mortgagee may remove the personal property of the mort-
gager, provided it be done in a careful and convenient manner and
to a safe place, without being liable in an action of trespass therefor.
*Allen* v. *Bicknall*, 26 Maine, 436.  In *Whitney* v. *Sweet*, 2 Foster,
10, a legal notice to quit on 20th October was given.  " This,"
observes Bell, J., " was a sufficient notice, and the tenancy was by
that notice terminated on the 20th.  After that day the plaintiff
was a trespasser; his goods were *damage feasant*, and the owner
had a clear and perfect right to go into the house with suitable
assistants, and then, peaceably and quietly, without breach of the
peace, remove the goods to a near and convenient distance, and
there leave them for the use of the owner, doing them no unneces-
sary damage."  These views have been fully sustained by the
supreme court of Massachusetts in repeated decisions.  *Curtis* v.
*Galvin*, 1 Allen, 215; *Mugford* v. *Richardson*, 6 Allen, 76.  In-
deed, after the legal termination of a tenancy, as in the case at bar,
the tenant " could have no longer any other rights than those of
ingress, egress, and regress, for a reasonable time to take care of and
remove his property."  *Moore* v. *Boyd*, 24 Maine, 242.  Those

Stearns *v.* Sampson.

rights the plaintiffs had in the most ample manner, had they seen fit to exercise them.

There is in the declaration a count for an assault and battery upon the female plaintiff. In reference to this branch of the case, the following instructions were given. " Was there a trespass committed upon the female plaintiff? She is the only one who seeks for damages. Whatever may have been the injury inflicted upon the other inmates of that house, she can recover on this suit only for that which was inflicted upon her. In order to constitute an assault, it is not necessary that the person should be touched, but there should be certain indignities. In the language of one of the decisions, if the plaintiff was embarrassed and distressed by the acts of the defendant, it would amount in law to an assault." The acts and indignities which from the charge might constitute an assault, were the bursting open a door, which the defendants had no right to fasten, and the inconveniences resulting from taking off the doors and taking out the windows, which made it uncomfortable for the female plaintiff to remain, where remaining, she was a trespasser. So the bringing a blood-hound by the defendant into his house, which is proved to have barked, but not to have bitten, and the making a noise therein, with other similar acts, it was contended, would amount to an assault and trespass," and of that the jury were to judge." Now such is not the law. An assault and battery is clearly defined by R. S. c. 118, § 28, thus: " Whoever unlawfully attempts to strike, hit, touch, or do any violence to another, however small, in a wanton, willful, angry, or insulting manner, having an intention, and existing ability, to do some violence to such person, shall be deemed guilty of an assault; and if such attempt is carried into effect, he shall be deemed guilty of an assault and battery." Now the removal of a door or windows, of the owner in possession, would constitute no assault. Indeed, as has been seen, 6 Allen, 76, the owner would, in attempting it, have the right to use as much force as was necessary to overcome the resistance of the unlawfully resisting and trespassing tenant. Acts which may embarrass and distress do not necessarily amount

to an assault. Indignities may not constitute an assault. Acts aggravating an assault, differ materially from the assault thereby aggravated. Insulting language or conduct may aggravate an assault, but it is not an assault. So the acts of the defendant, in taking out the windows of his own house, in a bleak and cold day, might distress one unlawfully occupying, and illegally refusing to quit his premises, but they could in no sense be regarded as an assault upon her. One may be embarrassed and distressed by acts done "in a wanton, willful, angry, or insulting manner," where there is no "intention, nor existing ability to do some violence" to the person, and yet there be no assault. The instruction on this point is equally at variance with the common law, and the statute of the State.

The plaintiffs rely mainly, in support of their suit, upon the case of *Newton* v. *Harland*, 39 E. C. L. 581, in which it was held that where a tenant remains in possession after the expiration of his term, the landlord is not justified in expelling him by force in order to regain possession. But the case relied upon is different in its facts from the present. There physical force was used to enter and expel the tenants. In the case at bar the entry was peaceable. The court in that case were divided. Coltman, J., in delivering his opinion, says, " I am not aware that any doubt exists, that after the entry made, he (the landlord) may turn any ordinary trespasser off the land; and I am unable to see any principle which should prevent him from treating his tenant at sufferance in the same way, for such a tenant is a mere wrong-doer. Co. Lit. 576 ; Pike & Hassen's case, 3 Leon, 233; Sir Moil Finches' case, 2 Leon, 143."

" For the preservation of the peace, the law will furnish forcible entry; but the tenant at sufferance being himself a wrong-doer, ought not to be heard to complain in a civil action for that which is the result of his own misconduct and injustice.

" The distinction between the civil rights of a person forcibly turned out of the possession of land, and the penal sanctions by which he is protected from being forcibly dispossessed, are drawn

in a marked way in the cases in our old books relating to the statutes of forcible entry. Although by those statutes all forcible entries were prohibited, even by those who had title to enter, yet the party dispossessed could maintain no action on the statutes. This is pointedly laid down in the Year Book, 9 H. 6, 19; 15 H. 7, 17; F. N. B. 248 H."

The opinion of the majority in this case, too, is alike adverse to the prior as well as the subsequent decisions of the English courts on this question.

In *Taunton* v. *Costar*, 7 D. & E. 43, Lord Kenyon uses the following language. "Here is a tenant, from year to year, whose term expired upon a proper notice to quit, and because he holds over in defiance of law and justice, he now attempts to convert the lawful entry of his landlord into a trespass. If an action of trespass had been brought, it is clear the landlord could have justified under a plea of *liberum tenementum*. If, indeed, the landlord had entered with a strong hand to dispossess the tenant by force, he might have been indicted for a forcible entry; but there can be no doubt of his right to enter upon the land at the expiration of the term. There is not the slightest pretence for considering him as a trespasser in this case." It is to be borne in mind, as was held in *The King* v. *Wilson*, 8 D. & E. 358, the words *manu forti*, are understood to import something criminal in their nature; something more than is meant by the words *vi et armis*. In *Harvey* v. *Bridges*, 14 M. & W. 437, Park, B., uses this language. "If it were necessary to decide it, I should have no difficulty in saying that when a breach of the peace is committed by a free-holder, who, in order to get possession of his land, assaults a person wrongfully holding possession of it against his will, though the free-holder may be responsible to the public in the shape of an indictment for a forcible entry, he is not liable to the other party. I cannot see how it is possible to doubt, that it is a perfectly good justification to say that the plaintiff was in possession of the land against the will of the defendant, who was owner, and that he entered upon it accordingly; even though in so doing, a breach of the peace was

committed." In *Pollen* v. *Brewer*, 97 E. C. L. 371, Erle, C. J., after stating the modes in which the tenancy was terminated, says, " I am of opinion that either of these was a sufficient intimation to the plaintiff that he was no longer tenant at will, and that his continuance of the possession was without a shadow of right, and therefore that the defendant was justified in treating him as trespasser and removing him from the premises. There was abundant evidence that at the time of the expulsion, the plaintiff was on the premises without any right."

In *Burling* v. *Read*, 63 E. C. L. 907, Lord Campbell says, " The plaintiff is a trespasser. What right can he have to prevent the owner of the soil from pulling down the house ?"

The authorities in Massachusetts are in conformity with the later English authorities on this subject. *Meader* v. *Stone*, 7 Met. 147. " By the principles of the common law," observes Wilde, J., in *Fifty Associates* v. *Howland*, 5 Cush. 214, " some degree of force is allowed in expelling an intruder into a man's lands or tenements, who refuses to quit, although he has no right to the possession. The owner is not justified to use such degree of force, as would tend to a breach of the peace, but he is allowed to use such force as would sustain a plea of justification of *molliter manus imposuit*." In *Curtis* v. *Galvin*, 1 Allen, 215, it was held, that a tenant at sufferance could not maintain an action against the owner of the premises, who entered upon and expelled him, and removed his furniture. In *Mugford* v. *Richardson*, 6 Allen, 76, the owner of a tenement entered the same without objection, as in the present case, and removed the windows. The female plaintiff attempted to prevent their removal. The court held the defendant was justified in using sufficient force to overcome her resistance.

In New York, it was early determined, that if a person, having a legal right to enter upon land, enters by force, though liable to indictment, he is not liable to a private action for damages at the suit of the person whom he turns out of possession. *Hyatt* v. *Wood*, 4 Johns. 150 ; *Ives* v. *Ives*, 13 Johns. 235. It was held in *Willard* v. *Warren*, 17 Wend. 257, that to constitute a forcible

entry, there must be something beyond a mere trespass upon the property. Breaking the door of an out-house in the actual possession of the plaintiff, by forcing the lock, was decided not to be a forcible entry. But in the case under consideration the entry was peaceable and without force.

The plaintiff, upon the termination of his lease, became tenant at sufferance. In such case the owner of the fee may enter at any time and put an end to his holding. *Reed* v. *Reed*, 48 Maine, 388. In *Allen* v. *Bicknell*, 36 Maine, 436, it was held that the mortgagee might enter on the mortgager by force and remove his goods, and that the mortgage would afford a complete justification. The same principles apply where the tenancy is legally terminated. Indeed, such is assumed to be the law in *Cunningham* v. *Horton*, 57 Maine, 420.

Without determining the effect of a forcible entry on the rights of parties, after the due termination of a tenancy, it seems to be fully settled by the weight of judicial authority, when a tenancy has been legally terminated, that the landlord may enter peaceably upon the premises; that thus entering, he may remove the tenant therefrom, using such force as would sustain a plea of *molliter manus imposuit*; and that he may remove his goods, if the tenant after a sufficient opportunity, neglects to do so, using due care and caution in their removal and depositing them in a near and convenient place. *Motion sustained. New trial granted.*

KENT, WALTON, BARROWS, DANFORTH, and TAPLEY, JJ., concurred.