ELEANOR J. WESTERVELT, APPELLANT, *v.* JOHN T. ACKLEY, RESPONDENT.

*Married woman — liability of, for rent of premises leased to her — Chap.* 90, *Laws* 1860 — *Coverture — defense of.*

Since the enactment of chapter 90, Laws 1860, a married woman is liable for the payment of rent, reserved for the use of premises leased to her. The acquisition of a leasehold estate is substantially a purchase of the term for which the estate is rented, and the rent reserved is the purchase-price. And for that, the statute renders married women liable, when such an estate is purchased by them.

Whether married woman must set up the defense of coverture in her answer, in order to have the benefit of it, *quere.*

APPEAL from a judgment in favor of the plaintiff, recovered on a trial before the court at Special Term.

The action was brought to have a deed of certain premises in the city of New York, executed by one Cornelius Westervelt and his wife to the defendant in March 1861, declared a mortgage, and for a redemption. The answer alleged that the deed was an absolute conveyance, and set up by way of counter-claim, a claim for rent of the same premises, under an agreement alleged to have been made by the defendant with the plaintiff, on the 1st of May, 1867. The justice before whom the cause was tried, found, as matter of law, that the deed was an absolute conveyance, and he ordered judgment for the amount of the rent.

*T. C. T. Buckley,* for the appellant.

*A. J. Vanderpoel,* for the respondent.

DANIELS, J. :

The first question presented by the appeal taken from the judgment in this action, is, whether a deed, executed by the plaintiff and Cornelius Westervelt, her husband, of premises owned by him, to the defendant, and delivered on the 6th day of January, 1862, was in fact a mortgage. The deed was absolute in form, containing all the usual covenants. At the time it was delivered, Cornelius Westervelt was embarrassed in his circumstances, and indebted to the defendant, who was his son-in-law. The consideration mentioned in the deed, is the sum of $7,900, and the premises described in it were, at the time of its delivery, incumbered by mortgage in the sum of $5,500, besides unpaid taxes.

The evidence tended to show that Cornelius Westervelt was indebted to the defendant in the sum of $2,000 and upward, at the time of the delivery of the deed; and he testified that he delivered it simply as a security for what he was owing, and that the defendant received it for the same purpose. But the evidence of this witness was considerably impaired by the fact that when he was examined on certain supplementary · proceedings instituted against him, he swore that he sold the premises to the defendant for $7,500, subject to a mortgage of $5,500, and that the defendant had paid him the difference of $2,000. It is true, that, in the same connection, he also stated that there was an understanding that he might at any time redeem the property, by paying him the sum of $2,000, and assuming the mortgage. But that was a very different thing from a mere security for debt. It was a sale, with an agreement for the subsequent purchase of the property by the payment of a fixed amount for it. And that it was regarded as a complete sale, appears further from the proceedings taken by him in 1867, before the plaintiff received her deed from Salter, to whom the witness gave a deed of the premises in 1870. For, in his sworn inventory accompanying his petition, he stated that he had no real estate. And that could not have been true, if the deed received by the defendant had been delivered only as a mortgage.

The evidence of this witness, on the other hand, was slightly corroborated by that which the plaintiff gave as a witness. For she swore that she paid the defendant money, to keep down the interest on the mortgage, and that the house was mentioned between her-

self and the defendant as her house, after he had received the deed. And it was still further corroborated by the statement sworn to by Salter, who said that he read to the defendant what Cornelius Westervelt had said in the supplementary examination concerning his right to redeem, and that the defendant responded that he would swear the same way, and that he held the deed as a security. Welch also testified that the defendant, in substance, conceded that his debt had been paid, but that he claimed still to hold the property for supporting Westervelt's family. Horton's evidence afforded the plaintiff very slight benefit, because he said that the defendant claimed the transaction to be a fraud on Westervelt's creditors. This is the substance of the plaintiff's case, as to the nature and character of the deed; and, standing by itself, it was sufficient to justify a judgment in the plaintiff's favor, declaring the deed to have been delivered and received as a mere mortgage. But the defendant denied, in the evidence he gave as a witness, the case made on the part of the plaintiff, and stated that the deed was expressly delivered to him, to make him whole for what Westervelt individually owed him, to do whatever he liked with it; and that it was said, at the time, that it was the defendant's, and was handed to him on account. This evidence, consistently with the form of the deed itself, indicated an absolute delivery of it, in payment of the debt Westervelt owed the defendant. And the evidence of the defendant's wife — that her father wanted the defendant to take the house and do whatever he could with it; that it might be at some time worth something to him; that he, Westervelt, could do nothing with it; and that he did not know how he should ever repay the defendant — tends to confirm the truth of the claim made by the defendant himself. Under this evidence, which is the substance of what was given respecting the nature and character of the deed, a question of fact was presented for the decision of the court before whom the witnesses were examined, and who could, from that circumstance, judge, to some extent, as to how much credit should properly be given to their statements. There was no such preponderance on either side, as would justify this court, on appeal, in holding that the conclusion adopted by the court, was wrong, and, for that reason, reverse the judgment recovered upon it.

The defendant, by his answer, alleged that he had rented the premises to the plaintiff, in the year 1867, for the yearly rent of $1,500, and that she had used and occupied them, under that demise, until the time the answer was served. This was denied by the plaintiff in her reply. And during. the trial evidence was given without objection, tending to sustain the allegations made. The plaintiff's evidence positively denied this demise and the occupancy under it. But the proof left this portion of the case in the simple form of a question of fact, which the court could decide either way without violating any settled principle of law applicable to the case; and, on that evidence, the court decided in favor of the defendant. The plaintiff did not resist the defendant's demand for rent, by alleging in her reply that she was a married woman, although the court found that fact in her favor. But, as it was not alleged, it is exceedingly doubtful whether the fact found, could properly prove of any benefit to her upon this appeal, even if that would relieve her from the consequences of her agreement to pay the rent.* It has been held that a married woman was not liable for the payment of rent reserved for the use of premises leased to her. But that was before the enactment of chapter 90, of the Laws of 1860. By section 7 of that act, it was provided that, " Any married woman may, while married, sue and be sued in all matters having relation to her sole and separate property, or which may hereafter come to her by descent, devise, bequest, purchase or the gift or grant of any person, in the same manner as if she were sole." † This changed the law as it had previously existed, and rendered married women liable for the price of property purchased by them. The acquisition of a leasehold estate is substantially a purchase of the term for which the estate is created, and the rent reserved is its purchase-price. And for that, the statute renders married women liable, when such an estate may be purchased by them. In considering the effect of a lease made by a married woman, Earl, Commissioner, in deciding the case of *Prevot* v. *Lawrence,* ‡ said : " If she hired any lands, whether she did it for money paid from her separate estate or upon credit, the lands, to

* O'Toole v. Garvin, 3 Sup. Ct. Reports, 118, and cases cited in opinion.

† Vol. 4, N. Y. Stats. at Large, 516, § 7. ‡ 51 N. Y., 219, 221.

the extent of her interest therein, became her separate estate ; and she could let them, and enter into any contract in reference to them as fully and effectually as if she were a *feme sole.*" By the demise made to the plaintiff, the term created in her estate, became her sole and separate property. And, in all matters relating to such property, as well as property granted to, or purchased by her, the statute has rendered her liable to suit, in the same manner as if she were sole. Substantially the same thing was held in *Frecking* v. *Rolland*,* where a married woman was decided to be liable for the purchase-price of real property conveyed to her. The object of this provision in the act of 1860, seems to have been to enable married women to purchase property, and render themselves liable for its price, to the same extent as though they were unmarried.† And it would clearly have been unjust to confer the privilege of purchasing and acquiring, without the corresponding obligation of making payment of the price agreed to be paid as the consideration of it. Before that enactment, the obligation of a married woman to pay rent, could not be enforced without an explicit charge of the agreement to pay it upon her separate property. But when that conclusion was maintained, care was taken to distinguish the case, then before the court, from those which might arise after the changes which were made by the enactment of the statute in 1860.‡ Under the changes made by that act, a married woman may since be sued, the same as an unmarried woman could be, for any matter relating to her sole and separate property, or to property which she has acquired by grant or purchase. The leasehold estate, for the rent of which the counter-claim was made, was acquired by the plaintiff by purchase, and it thereupon became a portion of her separate estate, as that has been defined by the statutes of this State, enacted for the protection of the rights of married women. The rent agreed to be paid for such interest, had such a relation to her separate estate, as would clearly have rendered an unmarried woman liable for its payment, and, for that reason, was sufficient to impose the same liability upon the plaintiff for its payment, under the terms used in the statute. Whether the counter-claim could properly be interposed in an

* 53 N. Y., 422.        † Quassaic Bank v. Waddell, 3 N. Y. Sup. Ct., 680.
‡ Draper v. Stouvenel, 35 N. Y., 507.

action of this description, was not questioned upon the trial, or on the argument of this appeal, and, for that reason, it is unnecessary to consider the point at the present time. It may be, that it was so connected with the subject of the action, as to render that proper.

No reasons beyond those considered, have been relied upon in support of the appeal taken from the judgment recovered in this action; and, as they cannot be sustained; the judgment should be affirmed with costs.

Davis, P. J., and Brady, J., concurred.

Judgment affirmed.