## Sterling *v.* Warden.

A mere parol license, though without consideration, will furnish a justification for an act which would otherwise be a trespass.

Such license will extend and apply to and protect such agents or servants of the licensee, whose assistance is required to accomplish the authorized act.

A license coupled with an interest, is where the person obtaining a license to do a thing acquires also a right to the possession and control of the property with which the license is connected. In such case the authority conferred by the license is not merely a permission; it amounts to a grant, and it may be assigned to a third person.

It is not essential to the condition of such a license that the right or title to the property should have been derived from the licenser; but the license to enter on the land and remove the property is a license coupled with an interest, and therefore assignable and irrevocable, if the licensee's right to the possession of the property is derived from another source, provided the party granting the license has assented to the contract or other condition of things whereby the licensee acquires the title or the right to the possession of the property. And such assent may be inferred from the duty of the licensee to recognize the contract or condition of things from which the other party's right is derived.

Where in trespass, *quare clausum,* the defendant pleaded a license to his principal coëxtensive with all the allegations of trespass, such license being to enter the plaintiff's close for the purpose of taking and removing personal property, to the possession and control of which his principal was entitled, and that it was necessary that the defendant's assistance should be rendered in the removal of the property, the plaintiff, on demurrer, cannot assign, as a reason for an attempted revocation of the license, that the defendant was personally obnoxious to him. He can only justify a revocation on that ground, by replication or new assignment.

Where permission to enter the licenser's premises and do certain things is given by the party in possession, in such case, although the person to whom it is given may, by the commission of unlawful acts after entry, become a trespasser, still such subsequent acts will not affect the original entry so as to make that which was sanctioned by the licenser a trespass.

A person entitled to the immediate possession of property located upon the premises of another, without the fault of the party entitled to the possession of such property, may enter those premises after demand, without legal process, against the consent of the party in possession, and by force and remove the property, provided no more force is employed than be-

comes necessary by the resistance interposed by the other party to prevent the entry and the removal of the property.

To an action of trespass *quare clausum*, and an assault upon the plaintiff and his wife, the defendant pleaded, in substance, that the plaintiff had been postmaster at the town of M., keeping the post-office in his own dwelling-house; that G., having been appointed as the successor of the plaintiff in the office of postmaster, and having qualified himself according to law, notified the plaintiff that he should come on a certain day to take possession of the public property of the United States in said post-office, and remove it to another place in which the defendant designed to keep the post-office; that at the appointed time G. went, with the defendant, as his agent and servant, the defendant being also assistant postmaster, duly appointed and qualified, to remove said property, it being necessary that the defendant should render his assistance in the removal of the property; that the defendant, under the direction of G., was about entering the post-office, through an open outside door, the ordinary means of entry to the post-office, for the purpose of assisting in the removal of the property, when the plaintiff's wife forbade him to enter, and assaulted him; whereupon the defendant removed the plaintiff's wife out of his way, using no unnecessary force, and was proceeding to remove the public property, when he was again assaulted and obstructed by the plaintiff and his wife, and removed them out of his way, and, in self-defence, assaulted them, using no unnecessary force—which is the trespass alleged. On demurrer to this plea,—*held*, that these facts constituted a full justification for the alleged trespass.

Every citizen has the right, at proper hours, to enter the post-office, in an orderly and peaceable manner, for the purpose of getting his mail matter.

TRESPASS, by Nathanial K. Sterling against Alexander Warden. The first count alleged the breaking and entering of the plaintiff's dwelling-house, July 30, 1869, and an assault on the plaintiff and his wife; the second count alleged an assault on the plaintiff; and the third count alleged an assault on the plaintiff's wife.

The defendant, besides the general issue, pleaded nine special pleas, to all of which the plaintiff demurred.

The case was reserved.

1. First plea, the general issue.

2. And for further plea in this behalf, said defendant, by leave of the court here for that purpose first had and obtained, comes and defends, &c., when, &c., and prays judgment if the plaintiff his aforesaid action thereof against him ought to have or maintain, because he says that for a considerable time next previous to the thirtieth day of July, A. D. 1869, being the day upon which said supposed trespasses are alleged to have been committed, the plaintiff had been postmaster at and of the

post-office in the town of Monroe, in said county of Grafton, and had kept said post-office in a certain room in a certain building in said Monroe, which said building was about ten feet square, and contained no other room, and had been and was erected by the plaintiff for the purpose of being used as a post-office, and was near to and adjoining his dwelling-house in said Monroe, and was connected with said dwelling-house by an inside door opening therefrom into said dwelling-house, and had itself a separate outside door which was ordinarily used for passage into and out of said office ; and said post-office was then and there, to wit, on said thirtieth day of July, kept in said room in said building, and the duties of postmaster at said post-office were then and there being done therein by the plaintiff, and said building and room were then and there being used solely and exclusively for the purposes and business of said post-office, and always had been so used since the erection of said building as aforesaid ; and sundry books, letters, papers, mail-bags, letter-cases, tables, drawers, and other articles, and things belonging to said post-office, had been, during the time since said erection, and were then, to wit, on said thirtieth day of July, A. D. 1869, remaining and being in said post-office, in the room aforesaid in said building ; and a short time previous to said thirtieth day of July, to wit, on the twenty-second day of said July, the plaintiff was removed by the postmaster-general from said office of postmaster at said post-office, and one John D. Gilchrist was appointed postmaster at and of said post-office in place and instead of the plaintiff ; and on said twenty-second day of July, A. D. 1869, said Gilchrist accepted said appointment, and took the oath of said office, and appointed the defendant assistant postmaster of and at said post-office, and the defendant then and there accepted said office of assistant postmaster, and took the oath of office as such assistant postmaster ; and thereafterwards, to wit, on the twenty-ninth day of said July, said Gilchrist saw the plaintiff, and informed and notified him of the facts and matters aforesaid, and that he, said Gilchrist, proposed and intended to go to said post-office room in said post-office building, on the thirtieth day of said July, and then and there remove and take away therefrom the aforesaid furniture, articles, and other things belonging to said post-office as aforesaid, and remove the same to another building in said Monroe in which said Gilchrist then intended and proposed to establish and keep said post-office, which said last mentioned building was the same in which he did immediately thereafterwards establish and keep said post-office ; and the plaintiff then and there, to wit, on said twenty-ninth day of July, assented thereto, and gave his consent, license, and permission that said Gilchrist might and should take away and remove said furniture, articles, and things as aforesaid ; and thereafterwards, on said twenty-ninth day of July, said Gilchrist requested and directed the defendant, together with one Nehemiah H. Lane, to go to and into said post-office room, on the said thirtieth day of July aforesaid, and then and there aid and assist him, the said Gilchrist, in taking away and removing said furniture, articles, and things belonging to said post-office, and in removing the

same to said other building for the purpose aforesaid; and it was then and there necessary and proper, in order that said Gilchrist should be able and have sufficient force, conveniently and properly to take away and remove said furniture, articles, and things from said post-office room as aforesaid, that he should then and there be aided and assisted by the defendant and the said Lane as aforesaid, and as was in fact done, in the way and manner hereinafter mentioned.

And the defendant, in compliance with and in pursuance of said request and direction of said Gilchrist, and as his servant, did there-afterwards, to wit, on said thirtieth day of July, A. D. 1869, go to said post-office building and to said room, together with said Lane, for the purpose of aiding and assisting said Gilchrist as aforesaid, and for the other and further purpose of getting and obtaining any mail matter which might then and there be in said post-office for him the said defendant; and when the defendant arrived at said post-office building as aforesaid, and during all the time that he was in and about said building and said room as is hereinafter set forth, said Gilchrist was in and about said building and room for the purpose, and was engaged in the work and business, of taking away and removing said furniture, articles, and things as aforesaid; and when and while the defendant was about entering and going into said post-office building through the outside door thereof, which was then and there open, and into said room for said purpose, the plaintiff's wife, Rosetta A. Sterling, did then and there forbid the defendant to enter into said building and room, and did forcibly throw herself in his way, and did make an assault upon the defendant, and did forcibly seize hold of him, and with force resist and oppose his going into said post-office building and room, and would then and there have more and further assaulted and beaten the defendant if he had not immediately defended himself against the said Rosetta.

Whereupon the defendant did then and there defend himself against the said Rosetta, as he lawfully might do for the cause aforesaid, and in so doing did necessarily and moderately push the said Rosetta and remove her out of his way, and did overcome her resistance to his going into said building and room for the purposes aforesaid, using no more force than was necessary and proper for said purpose.

And the defendant thereafterwards entered through said outside door, which was then and there open as aforesaid into said post-office room in said building, as he lawfully might do for the purposes aforesaid, and then and there, together with said Lane, in compliance with and in pursuance of said request and direction of said Gilchrist, and as his servant, did aid and assist the said Gilchrist in taking away and removing from said post-office room said furniture, articles, and things belonging to said post-office, and in removing the same to said other building, as he might lawfully do. And the plaintiff did then and there forbid the defendant to enter into said post-office building as aforesaid, and into said post-office room, and to remain therein, and, together with his said wife Rosetta, with force and arms did make an assault and battery upon the defendant, and did with force and arms

resist and oppose his entering and remaining in said post-office building and room as aforesaid, and did resist and oppose his aiding and assisting said Gilchrist as aforesaid in taking away and removing said furniture, articles, and things belonging to said post-office ; and the plaintiff and his said wife did then and there assault and beat the defendant with a chair, and with their hands and fists, and would then and there have further beaten, bruised, and ill-treated the defendant if he had not immediately defended himself against them.    Whereupon the defendant did then and there defend himself against the plaintiff and his said wife, as he lawfully might for the cause aforesaid, and in so doing did necessarily and unavoidably a little beat and bruise the plaintiff, and did remove the plaintiff and his said wife out of his way, and did overcome their resistance to his going into and remaining in said post-office building and room for the purposes aforesaid, and to his aiding and assisting said Gilchrist in taking away and removing said furniture, articles, and things therefrom as aforesaid, using no more force than was necessary and proper for the purposes aforesaid, and doing no unnecessary damage to the plaintiff and his said wife the said Rosetta.    And when the defendant first arrived at said door of said post-office building as aforesaid, and immediately before said assaulting, beating, and illtreating of him by the plaintiff and his said wife, he notified and informed the plaintiff and his said wife that he came there with and for the purpose of going into said post-office building and room, at the request and by the direction of the said Gilchrist, postmaster as aforesaid, in order to aid and assist the said Gilchrist in taking away and removing said post-office furniture, articles, and things as aforesaid, and for the other and further purpose of getting and obtaining any mail matter which might then and there be in said post-office for him, said defendant.

And so the defendant says, that if any damage then and there happened to the said plaintiff or to his said wife, the same was occasioned and caused by the said assaults and batteries of the said plaintiff and wife on the defendant, and the necessary and proper defence of the defendant against the same.

Which are the same supposed trespasses in the introductory part of this plea mentioned, and all the same whereof the plaintiff hath above complained in the several counts of his said declaration.    And this he is ready to verify.

Wherefore he prays judgment if the plaintiff his aforesaid action against him ought to have and maintain, and for his costs.

By his Att'y,                    H. HIBBARD.

3. The third plea sets up necessary self-defence as a justification of the assault.

4. The fourth plea alleges, in justification of the breaking and entering, that the defendant did the acts complained of as the servant and agent of one Gilchrist, by the leave and license of the plaintiff to said Gilchrist.

5. Same plea as last above to first count, generally without restriction.

6. Same plea to the whole declaration generally.

7. Same plea as the second, omitting after " and informed and notified him," on the second page of the second plea, the words "of the facts and matters aforesaid, and."

8. Same plea as the seventh, inserting next after the words " and took the oath of office as such assistant postmaster," the words " of all which the plaintiff then and there had notice."

9. Same plea as the seventh, omitting towards the close of the seventh plea the words following, viz. : "And when the defendant first arrived at said door of said post-office building as aforesaid, and immediately before said assaulting and illtreating of him by the plaintiff and his said wife, he notified and informed the plaintiff and his said wife that he came there with and for the purpose of going into said post-office building and room, at the request and by the direction of said Gilchrist, postmaster as aforesaid, in order to aid and assist the said Gilchrist in taking away and removing said post-office furniture, articles, and things as aforesaid, and for the other and further purpose of getting and obtaining any mail matter which might then and there be in said post-office for him, said defendant."

10. Same plea as the seventh, omitting towards the close of the seventh plea, next after the words " that he came there with and for the purpose of," the words following, viz. : " going into said post-office building and room, at the request and by the direction of said Gilchrist, postmaster as aforesaid, in order to aid and assist the said Gilchrist in taking away and removing said post-office furniture, articles, and things as aforesaid, and for the other and further purpose of."

*Carpenter*, with whom was *H. & G. A. Bingham*, for the plaintiff.

The principal questions in this case arise upon the demurrer to the defendant's second, seventh, eighth, ninth, and tenth pleas.

· I. The most favorable case which the defendant makes for himself is that stated in his second plea, and is in substance that he was assistant postmaster, and, at the request of the postmaster, went to aid him in removing the furniture and property of the office, and also to get his mail, of which facts the plaintiff was fully informed, but nevertheless forbade him to enter. The question is, whether a newly commissioned postmaster has a legal right to enter the office and take the property and furniture thereof belonging to the government from the possession of the late postmaster by force, and also whether he or any one may by force enter the post-office for his mail. It is submitted that there is no such right; that no person (except an officer of the law, armed with appropriate legal process) has a right even to enter the office, whether kept in a dwelling-house, as in this case, or elsewhere, by force, much less to take from the late postmaster's possession the personal property belonging to it.

It is an ancient and well settled maxim of the law, that in general no

man shall be permitted to assert his own rights or to redress his own wrongs by force.   He must resort to the remedies provided by law. 3 Black. Com. 3–5 and 120 ; 2 Greenl. Ev., sec. 98, page 74 ; Roscoe's Cr. Ev. 291 ; Hamm. N. P. 143, 144 ; Bacon's Abridg., Assault and Battery, C ; *State* v. *Elliott,* 11 N. H. 540 ; *Sampson* v. *Henry,* 11 Pick. 379–387 ; S. C. 13 Pick. 36 ; *Anthony* v. *Haneys,* 8 Bing. 186 ; *Newton* v. *Harland,* 1 M. & G. 644 ; *Alderson* v. *Waistell,* 1 C. & K. 358 ; *Weaver* v. *Bush,* 8 T. R. 78 ; *Tullay* v. *Reed,* 1 C. & P. 6 ; *People* v. *Cooper,* 13 Wend. 379 ; *Spencer* v. *M'Gowen,* do. 256.

This case falls within none of the exceptions.   It runs wide of the question discussed in the Am. Law Rev. for April, 1870, p. 429, *et seq.* If the view of the author of that article is sound (which is not admitted), it stands upon grounds peculiar to that particular question. COLTMAN, J., dissenting in *Newton* v. *Harland,* above cited ; *Harris* v. *Gillingham,* 6 N. H. 9.

II.   In the other pleas, the allegations of notice to the plaintiff of the character in which and of the purpose for which the defendant came are either wholly or in part omitted ; and in case our first position is not sustained, it will become material to consider how far those allegations are material.   The plaintiff submits that no matter or thing could give the defendant a legal right to use force to effect his purpose, unless made known to the plaintiff.   Even an officer of the law may, unless his authority is in some manner made known, be treated as a trespasser.   *Mackalley's case,* 9 Co. 69 *a,* and Fraser's note 1 ; Roscoe's Cr. Ev. 754 ; 1 Arch. Cr. Pr. and Pl. (Waterman's ed.) 856, 871, 872, and notes ; 1 Hale 458 ; 1 East P. C. 321, 322 ; *Com.* v. *Field,* 13 Mass. 321–323 ;—see, also, *Ilsley* v. *Nichols,* 12 Pick. 270, and *Closson* v. *Morrison,* 47 N. H. 482, and cases cited as to the effect of using unlawful means to effect a lawful purpose.

*Hibbard,* for the defendant.

The questions upon these pleadings arise, not in an indictment under a statute of forcible entry and detainer, nor in a proceeding of any kind in behalf of the State, but in an action of trespass for breaking and entering the plaintiff's close, and assaulting the plaintiff and his wife.

These questions are to be settled by the rules of the common law, unqualified by any special statutes,· our statute of forcible entry and detainer, passed in 1791, which embodied substantially, and almost in terms, the provisions of the English statutes upon the same subject, having been repealed in 1842, without any substitute enactment of a like kind.

Though there is a degree of confusion and seeming contradiction upon some of the points here involved, occasioned materially by uncalled for and unconsidered *dicta,* and by disregarding the distinction between proceedings under special statutes and those which are according to the course of the common law, and also by differences in

different jurisdictions as to the existence and nature of these statutes, the justification contained in these pleas, more particularly set forth in the second plea, is fully sustained by the weight of paramount authority, as well as by sound legal reason. 1 Chitty's Pl., 6th Am. ed., 204; *Taylor* v. *Cole*, 3 T. R. 292; *Taunton* v. *Costar*, 7 T. R. 431; *Argent* v. *Durrant*, 8 T. R. 403; *Turner* v. *Meymott*, 1 Bing. 158 (8 E. C. L. 450); *Davison* v. *Wilson*, 11 Ad. & Ell. N. S. 889 (63 E. C. L.); *Burling* v. *Read*, same 905; *Hyatt* v. *Wood*, 4 Johns. 150; *Wood* v. *Hyatt*, 4 Johns. 313; *Ives* v. *Ives*, 13 Johns. 235; *People* v. *Leonard*, 11 Johns. 504, and note; *People* v. *Van Nostrand*, 9 Wend. 50; *Blades* v. *Higgs*, 10 C. B. N. S. 715–721; *Jackson* v. *Farmer*, 9 Wend. 201; *Davis* v. *Burrell*, 70 E. C. L. 821; *Pollen* v. *Brewer*, 97 E. C. L. 370; *Jackson* v. *Morse*, 16 Johns. 197; *Mussey* v. *Scott*, 32 Vt. 82; *Beecher* v. *Parmlee*, 9 Vt. 352; *Sampson* v. *Henry*, 13 Pick. 36; *Miner* v. *Stevens*, 1 Cush. 482; *Meader* v. *Stone*, 7 Met. 147; *Curtis* v. *Galvin*, 1 Allen 215; *Moore* v. *Mason*, 1 Allen 406; *Mugford* v. *Richardson*, 6 Allen 76; *Winter* v. *Stevens*, 9 Allen 526; *Merrill* v. *La Granja*, 99 Mass. 383; *vide*, also, Am. Law Reporter for April, 1870, for a very learned and exhausting discussion of the subject of the right of a landlord or owner of property to take and hold possession by force.

These authorities are applicable to this case, and decisive of .it. The postmaster, whether "newly commissioned" or commissioned long ago, had an equal right for similar reasons, and, so far as there is any difference, a greater right for stronger reasons, as a matter of public necessity, to take possession of the post-office property by force, if necessary, and to hold and use the same, that an individual would have to take and hold his private property, real or personal, and, if forcibly opposed, to repel force by force sufficient for his defence and protection, in the proper and efficient discharge of his official duties. If he had failed to do this, he would have been neglectful of his duty to the government, whose officer he was, and to the public. His right and duty in this regard were the right and duty of his servant, the defendant, acting by his request and direction. The plaintiff had no right to prevent or obstruct the execution of this duty by opposing the entry of the servant and the removal of the property by him, but was himself a trespasser in so doing. He had not the pretence of any claim or interest of his own to protect.

The defendant, as assistant postmaster, had also, by virtue of his office alone, subject to the control only of his official superior, the right, and it was incumbent on him to do the same things, without special direction or request. He did not, as did the defendants in the cases cited, eject or seek to eject the plaintiff, or disturb him in the possession of his dwelling, land, nor of any other thing in which he claims to have any right or title. He merely sought that which he had an undisputed right to take, by virtue of his office as well as by the plaintiff's license to his superior, and to which the plaintiff did not and could not claim any right. He was first assaulted and beaten by the plaintiff and his wife. He then and then only used force sufficient,

and no more than sufficient, to defend and protect himself, by the means and in the manner set forth in the pleas.

The fourth, fifth, and sixth pleas allege license by the plaintiff to the postmaster, Gilchrist, to enter the post-office, or room in which the post-office was kept, and remove the property, and avers also that the defendant did the acts complained of as the servant and agent of Gilchrist, which license never was revoked, nor did the plaintiff, though present, object to its execution by Gilchrist in the manner in which it was executed. Gilchrist entered peaceably, and was in the peaceable possession of the property, and engaged in removing it when the defendant came to assist him. His entry was justified by the license to Gilchrist, independent of other grounds of justification.

The effect of the averments in the second, seventh, eighth, ninth, and tenth pleas is, that it was not the plaintiff's dwelling, but the post-office, *pro hac vice*, which the defendant entered, and that he is subject only to the legal restrictions and liabilities attendant upon such an act.

Notice to the plaintiff of the defendant's authority, resulting from his office and from his agency, though averred in several of the pleas, was not necessary. The cases in which notice of the authority of sheriffs has been held necessary, involving only the powers and liabilities of officers in the service of process, like *Ilsley* v. *Nichols*, 12 Pick. 270, and *Closson* v. *Morrison*, 47 N. H. 482, rest upon different grounds, and can settle nothing here.

Every citizen has a right to enter a post-office at seasonable times, for the purpose of leaving matter for the mail, seeing whether any mail matter is there for him, and receiving the same if there be any, and for the transaction of other business connected with the office. The law implies a continuous license for those purposes, which is not revocable except for special cause shown.

The breaking and entering of the plaintiff's close or dwelling is the gist of this action. The personal violence is mere aggravation, and is covered by the justification of the entry alone. *Taylor* v. *Cole*, 3 T. R. 292; *Davison* v. *Wilson*, 11 Ad. & Ell. N. S. 889 (63 E. C. L.); *Kingsbury* v. *Pond*, 3 N. H. 511.

It will be observed in *Taylor* v. *Cole*, as here, there were two counts, —one for breaking and entering, and an assault and battery in expelling, and the other for the assault and battery only. *Kingsbury* v. *Pond* was "trespass for breaking, entering the plaintiff's close, and taking and driving away fifteen sheep of the plaintiff." It does not appear by the report whether or not there was a separate count for the taking of the sheep. It was broadly laid down by the court as "*a well settled* principle of law that, in trespass *quare clausum fregit*, a justification of the entry will cover the whole declaration."

FOSTER, J. The questions to be considered in this case are all presented by the demurrer to the plea of the general issue and to the second special plea, which comprehends all the facts relied upon by the defendant as a justification for the trespass alleged. The other pleas

vary from this only in the omission of certain allegations of fact contained in the second plea,—except that in the seventh plea there is an allegation that the plaintiff " then and there had notice " of the appointment and qualification of Gilchrist and the defendant as postmaster and assistant postmaster, omitting the allegation contained in the second plea, that Gilchrist informed him " of the facts and matters aforesaid."

The substance of the defendant's attempted justification is, not merely that, as assistant postmaster, an officer and agent of the United States government,—the agent and servant also of his immediate principal, Gilchrist, the postmaster, an officer and agent of the government,—he committed the acts charged in the declaration, solely and necessarily in pursuance of his right and duty ; but, also, that his entry upon the premises and removal of the personal property were justified by the license and permission given by the plaintiff to his principal, Gilchrist, and that the assault upon the plaintiff was committed in self-defence, and was accompanied with no unnecessary force.　He also attempts to justify his entry into the building, by insisting upon the right of a citizen to enter a public post-office for the purpose of getting his mail-matter, alleging that he went there for that purpose, making his errand known to the plaintiff.

We will first consider the subject of the license given by the plaintiff to Gilchrist,—bearing in mind that, upon demurrer, all the allegations of the defendant are to be regarded as established facts.

It appears, then, that with full notice on the part of the plaintiff of the appointment and qualification of Gilchrist and the defendant as postmaster and assistant postmaster, and special information from Gilchrist that he proposed and intended to go to the post-office room on the thirtieth of July, " and then and there remove and take away therefrom the furniture, articles, and other things belonging to said post-office, and remove the same to another building," the plaintiff then and there " assented thereto, and gave his consent, license, and permission that said Gilchrist might and should take away and remove said furniture, articles, and things, as aforesaid."　It also appears that the defendant was employed by Gilchrist, and acted under his direction, in the attempt to take possession of and to remove the property, and that his assistance was necessary for this purpose.

It is not needful to consider, in this connection, whether the entry of Gilchrist upon the premises was justifiable *virtute officii*, and under authority in law, whereby a duty being imposed upon a public officer to take possession of public property, such duty could not be performed without an entry upon the premises of the plaintiff; nor whether an implied license may be presumed, from the duty of the plaintiff to the government and its legally appointed agents, under the circumstances of this case (see 2 Bouv. Inst. 562–570, *passim*), which license or authority would extend as well to the defendant, the assistant postmaster, as to Gilchrist, his immediate superior and principal—*Boody* v. *The United States*, 1 W. & M. 150 ; because here express license to Gilchrist is averred and established.

The plea alleges that the plaintiff " gave his consent, license, and permission that said Gilchrist might and should take away and remove " the public property.

" A license is express where, in direct terms, it authorizes the performance of a certain act,—as where a man who owns a dam authorizes ' s neighbor to draw water from it to his mill: in this case the licen, has a right to enter the premises to get the water." 2 Bouv. Inst. *. A bare parole license, though without consideration, will furn: justification for an act which would otherwise be a trespass. *Mar Gale*, 24 N. H. 177 ; *Batchelder* v. *Sanborn, ibid* 479 ; *Rawson* v *', 4 Pick. 127. Sr cense, though ordinarily regarded as personal, extending only arty to whom it is expressly given, will nevertheless apply to a1 ; the agents and servants of the licensee, whenever from the ( ..ustances it can be presumed that there was an implied license to such persons,—" as where a license is given to a man to remove a weighty matter, which requires the assistance of several other persons." 2 Bouv. Inst. 568. A license to a man to remove a bank safe would imply a license to as many servants of the licensee as should be requisite for his assistance. A license necessarily implies the right to do everything without which the act cannot be done. Taylor's Land. and Ten., sec. 766 ; *Curtis* v. *Galvin*, 1 Allen 217.

The plea in this case is conclusive upon this fact, and establishes the license to the defendant. It alleges that Gilchrist requested the defendant to assist him, and that " it was necessary and proper, in order that said Gilchrist should be able and have sufficient force conveniently and properly to take away and remove said furniture, articles, and things from said post-office room as aforesaid, that he should then and there be aided and assisted by the defendant."

Undoubtedly a bare license is revocable before it is executed ; but there are licens- ; which are irrevocable, though they relate to an entry upon and ᵗ' ;upation of land or real estate, and are by parol ; " as where, fo. ce, the license is directly connected with the title to personal pɪ y which the licensee acquires from the licenser at the time the lic\ is given, whereby the license is coupled with an interest. Thus, ᴡ ᵌre one sells personal chattels on his own land, and, before a reasonable time to remove them, forbids the purchaser to enter and take them, it was held tᵒ ᵝ 'a license which he could not revoke within such reasonable ʃ- 'ettleton v. *Sikes*, 8 Met. 34 ; *Wood* v., *Manley*, 11 Ad. & ᵆ ɪs v. *Camp*, 11 Conn. 525 ; *White* v. *Elwell*, 48 Me. 360 ;- ᵌal Prop. *401.

And it is said that ioupled with an interest is where the party, obtaining a licensᴄ thing, also acquires a right to do it : in such case the authorit rred is not merely a permission ; it amounts to a grant, and it may be assigned to a third person. 2 Bouv. Inst. 568.

It is not indispensable to the condition of such a license that the right or title to the property sought to be removed should have been

derived from the licenser. The license to enter on the land and re-move the property is a license coupled with an interest, and so assign-able and irrevocable, if the licensee's right to the possession of the property is derived from another source, provided the party granting the license has assented to the contract or other condition of things whereby the licensee gains the title or the right to the possession of the property. And such assent may be inferred from the duty of the licenser to recognize the contract or circumstances from which the other party's right is derived. A person cannot justify entering the close of another to take his own property, without showing the circum-stances under which it came there, even though he alleges he did not do any unnecessary damage,—*Anthony* v. *Haneys*, 8 Bing. 186 ; 2 Selw. N. P. 1342; "but," says Baron PARKE, "all the old authorities say that where a party places upon his own close the goods of another, he gives to the owner of them an implied license to enter for the purpose of recaption." *Patrick* v. *Colerick*, 3 M. & W. 483 ; *Mussey* v. *Scott*, 32 Vt. 84.

Here, Gilchrist gained his title to the possession and control of the property from the United States. To that possession, right, and control the plaintiff expressly assented. And so Gilchrist acquired a license coupled with an interest, although the interest and title were not derived from the plaintiff. And as instances of the effect of a license, VAUGHAN, C. J., in *Thomas* v. *Sorrell*, Vaughan Rep. 331, says,—" A dispensation or license properly passeth no interest, nor alters nor transfers proper-ty in anything, but only makes an action lawful which, without it, had been unlawful : as a license to go beyond the seas, to hunt in a man's park, to come into his house, are only actions which, without license, had been unlawful. But a license to hunt in a man's park, and carry away deer killed to his own use ; to cut down a tree in a man's ground, and carry it away the next day after to his own use,—are licenses as to the acts of hunting and cutting down the tree ; but as to the carrying away the deer killed and tree cut down, *they are grants*. So, to license a man to eat my meat, or to fire the wood in my chimney to warm him by, as to the actions of eating, firing my wood, and warming him, they are licenses ; but it is consequent necessarily to those actions that my property may be destroyed in the meat eaten and in the wood burnt. So, as in some cases by consequent, and not directly and as its effect, a dispensation or license may destroy and alter my property."

And Baron ALDERSON, in *Wood* v. *Leadbitter*, 13 M. & W. 843, says,— "A mere license is revocable ; but that which is called a license is often something more than a license ; it often comprises or is connected with a grant, and then the party who has given it cannot, in general, revoke it so as to defeat his grant, to which it was incident."

In *Wood* v. *Manley*, 11 Ad. & E. 34, it appeared that goods which were upon the plaintiff's land were sold to the defendant, and that by the conditions of the sale, to which the plaintiff was a party, the buyer was to be allowed to enter and take the goods. It was held that, after the sale, the plaintiff could not countermand the license. And the

defendant having entered to take, and the plaintiff having brought trespass, and the defendant having pleaded leave and license and a peaceable entry to take, to which the plaintiff replied *de injuria*,—it was held that the defendant was entitled to the verdict, though it appeared that the plaintiff had, between the sale and the entry, locked the gates and forbidden the defendant to enter; and the defendant had broken down the gates, and entered to take the goods, " the plaintiff," as was said by WILLIAMS, J., " having assented to the terms of the contract, put himself into a situation from which he could not withdraw."

It is not necessary, as before remarked, that an authority in law to enter into the post-office and take the public property, by an agent of the government duly authorized for that purpose, should be shown, or presumed, from the circumstances of the case, although perhaps such authority and right, and the means of exercising it, would be a fair legal conclusion. The assent, license, and permission to enter and take the goods is express in this case; and if the authority of a purchaser of goods from the vendor, having license to enter and remove them, becomes an authority coupled with an interest irrevocable and assignable, *a fortiori*, it would seem that a license freely given by the party who never had any property in the goods, and whose right to the possession had been terminated by his removal from office,—a license given to his successor in office, entitled by law to the possession of the property,—could not be regarded as a license of more restricted character. Under the defendant's plea, he may prove a license in law or in fact, express or implied. 4 Bouv. Inst. 57.

Moreover, the pleas allege no revocation, in terms nor by implication, of the license to Gilchrist; and we have seen that such license, by necessary consequence, implies a license to employ such agents, servants, and assistance as may be requisite to make the license effectual. If it be said that the licenser may reasonably object to the entry and removal of goods by such a servant of the licensee as may happen to be personally obnoxious for any reason to the former, it is sufficient to say that no such objection is suggested by the pleadings; and on demurrer, such excuse for an attempted revocation is not open to the plaintiff. If the plaintiff relied upon such grounds, the defendant having pleaded a license coëxtensive with all the allegations of trespass, the plaintiff was bound to answer by replication or new assignment, or else stand concluded by his demurrer. 1 Chitty Pl. *624–637, *passim*.

Another important consideration is suggested by the pleadings. It is shown that " when the defendant arrived at said post-office building as aforesaid, and during all the time when he was in and about said building and room, as is hereinafter set forth, said Gilchrist was in and about said building and room for the purpose, and was engaged in the work and business, of taking away and removin gsaid furniture, articles, and things as aforesaid."

So that it would seem that when the defendant entered the building, the plaintiff, regardful as well of his duty as his license, had abandoned the possession and control of the goods to Gilchrist, and that

the license therefore had been substantially executed ; and a license executed is not countermandable. *Liggins* v. *Ince,* 7 Bing. 682.

But the first count in the plaintiff's declaration is an action of trespass *quare clausum,* and the gist of it lies in the injury to the possession—*Brown* v. *Manter,* 22 N. H. 472—the subsequent assault, if unjustifiable, being mere matter of aggravation. *Brown* v. *Manter, ante; Chellis* v. *Stearns,* 22 N. H. 315 ; *Ferrin* v. *Simonds,* 11 N. H. 363 ; *Taylor* v. *Cole,* 3 Term. 292. And if the right of entry is shown, the action, so far as it rests upon the first count, fails entirely, and the plaintiff cannot recover upon proof of the subsequent assault merely.

Where the authority or license to enter and do certain things is given by the party, there, although the person to whom the authority is given may, by the commission of subsequent acts, be a trespasser, yet such subsequent acts will not affect the original entry so as to make that which was sanctioned by the party complaining a trespass ; but the subsequent acts only will amount to trespasses. 2 Selw. N. P. 1342; *Wendell* v. *Johnson,* 8 N. H. 220.

In *Kingsbury* v. *Pond,* 3 N. H. 513, it is said to be " a well settled principle of law that, in trespass *quare clausum fregit,* a justification of the entry will cover the whole declaration," the court in this case adopting the argument of Ch. J. PARKER, who cited 1 Str. 61—Yelv. 126 ; 2 Salk. 642 ; and the court cited *Taylor* v. *Cole, ante.*

A person entering by license of the party may so abuse that license as to make himself liable for that abuse by some appropriate action,—as, for example, if the license in this case had extended only to permission to enter without the right to remove the goods, the party might have been liable in trespass *de bonis* for the removal of the goods; or, if necessary force and aggression were employed, he might be held liable in trespass for an assault ; but in neither case would he be liable in trespass *quare clausum. Sampson* v. *Henry,* 13 Pick. 36 ; *Mugford* v. *Richardson,* 6 Allen 76 ; *Winter* v. *Stevens,* 9 Allen 526, 530 ; *Merriam* v. *Willis,* 10 Allen 118. In *Taylor* v. *Cole,* Mr. Justice BULLER says : " The first count is for breaking, entering, and expelling; the plea only justifies the breaking and entering, showing a good cause for it : and that is a full answer to the first count ; for the breaking and entering are the gist of the action, and the expulsion is only matter of aggravation. If the plaintiff had wished to take advantage of the expulsion, he should have shown the special matter in a new assignment, for, according to the *Six Carpenters' case,* he should show in reply that which makes the party a trespasser *ab initio.*

The pleadings disclose yet another answer to the plaintiff's claim.

It appears that the building and room which the defendant entered was a building which, though connected with the plaintiff's dwelling-house by a side door, had also a separate outside door which was ordinarily used for passage into and out of said office. It was at this door, and no other, that the defendant applied for admission, and entered. " Said building and room were then and there being used, solely and exclusively, for the purposes and business of said post-office, and

always had been so used since the erection of said building." In the second, seventh, and tenth pleas it is alleged that "when the defendant first arrived at said door of said post-office building as aforesaid, and immediately before said assaulting, beating, and illtreating of him by the plaintiff and his said wife, he notified and informed the plaintiff and his said wife that he came there with and for the purpose of getting and obtaining any mail-matter which might then and there be in said post-office for him, said defendant."

The demurrer admits the defendant's declaration of purpose and intent, and the truth of it.

Is not this a complete answer to the charge of breaking and entering? If such facts do not warrant the conclusion of law that the party might lawfully, and against the consent of the plaintiff, enter the building for the purpose indicated, can there be any doubt that they furnish abundant evidence of an implied license by the party,—a license coupled with an interest and not revocable?

We think the public would be surprised to learn that any citizen has not a right to enter the post-office at all seasonable hours, and in a peaceable manner, for the purpose of getting his mail-matter.

If a man may justify entering into an inn or public house without the leave of the owner first specially asked, because, when a man professes the keeping of such inn or public house, he thereby gives a general license to any person to enter his doors—3 Bl. Com. 212 ; *Markham* v. *Brown*, 8 N. H. 523 ;—if a man who keeps a store for the sale of merchandise is presumed to license all persons to enter who come there for lawful purposes ;—if the same presumption arises in all cases where a person expects or invites persons to come and deal with him, let his business be what it may—2 Bouv. Inst. 568,—much more may any person justify his entrance into the place appointed and provided by the government, at the public expense, and without charge to the citizen, for the transaction of all business connected with the postal service of the country.

Upon the case presented by the pleadings, it would seem to be unnecessary to pass upon the main question considered by counsel in argument; but as the suggestions presented to our view may become of practical importance upon a future trial of the cause, we have considered them, and are prepared to express the opinion of the court upon the case in the aspect in which it has been mainly regarded in the argument.

The defendant contends that, independent of any express or implied license to himself or his superior, he had the right to enter the post-office by force, if necessary, and against the will of the plaintiff, for the purpose of removing the public property, to the custody of which he was entitled *virtute officii,* and to resist by force sufficient for the purpose the effort of the plaintiff and his wife to prevent the acquisition of the property.

If the defendant is unquestionably entitled to the immediate possession of the public property, and the plaintiff retains that possession

without pretence of right, as in this case, must the defendant resort to legal process and submit to its inevitable delay and expense ? or may he, by summary proceeding, without unnecessary force, assert his rights, and, by entry upon the premises of the plaintiff, take possession of the property wrongfully withholden from him ?

It is said that the law does not permit a man to assert his own rights or to redress his own wrongs by force,—and as a general principle the proposition is sound and wholesome; but we think it is not always to be asserted and maintained, rigorously and without qualification.

The relative positions of the plaintiff and Gilchrist, or the defendant, his servant, were not those of landlord and tenant at the period of the expiration of the tenancy, but it was so far similar that a strong analogy is presented between the form and substance of the defendant's pleas in this case and the plea of *liberum tenementum*, which gives the plaintiff apparent color.  This plea, like that, admits a sufficient possession in the plaintiff to support an action against a wrong-doer, but denies the plaintiff's rightful possession as against the defendant, and asserts a right in the defendant to immediate entry and possession for the purpose of taking the goods, to the possession of which the defendant was entitled.  2 Saund. Pl. & Ev. 1101; Steph. Pl. 316 ; *Doe* v. *Wright*, 10 Ad. & E. 763.

It is clearly the English law, and, as we believe, the strongly preponderating opinion of the American courts, that no civil action lies against a landlord for regaining with force the possession of the demised premises, unless there is an excess of force, and then only for such excess.

It has been remarked that "A tenant whose right to possession is determined either by the expiration of his term, by forfeiture, or by notice to quit, and who is therefore a tenant at sufferance, and himself a wrong-doer, may yet treat his lessor, who is entitled to immediate possession, as a trespasser, and, relying on his right, maintain trespass *quare clausum* against him, merely because the right of the latter has been forcibly asserted, seems so extraordinary a proposition, that if not warranted by express words of the statutes, nothing but the clearest implication from their language could justify it; and, as the removal of the tenant upon or after entry is but a part of the act of entry, and depends on the legality of the possession thereby gained for its justification, the action for assault or for removal of the tenant's goods must stand or fall with the action of trespass *quare clausum.*"   4 Am. Law Rev. 430.

. The statutes of forcible entry and detainer in England, and in those of the United States where they still prevail, invariably specify the penalty incurred ; and these statutes, and proceedings under them, in no way affect the civil character of the act of forcible entry, nor is any civil or common law liability to be implied from them.

In *Turner* v. *Meymott*, 1 Bing. 158, where the landlord, on the determination of a tenancy at will, broke into the house with a crow-bar— the tenant being absent, but having left furniture in the house, and

resumed possession—the court said,—" It must be admitted that [the landlord] had a right to take possession in some way. If he had used force, that is an offence in itself, but an offence against the public for which, if he has done wrong, he may be indicted." And the court set aside the verdict against the landlord in the action of trespass *quare clausum.*

This case is indorsed and approved in *Mussey* v. *Scott,* 32 Vt. 84, where BENNETT, J., says,—" In the case of personal property, the party injured may have redress by his mere act, by what is termed recaption, though this must not be done in a riotous manner, or attended with a breach of the peace."

In *Taylor* v. *Cole,* 3 T. R. 292, the principle seems to be clearly intimated, if not in terms expressed, that a legal possession can be acquired by an entry, though made with such force as to be punishable under the statutes of forcible entry and detainer. In delivering the opinion of the court, Lord KENYON said,—" It is true that persons having only a right, are not to assert that right by force; if any violence be used, it becomes the subject of a criminal prosecution; and that is the amount of the case cited from Shower, which was a proceeding under the statute for a forcible entry. (The case referred to is *Rex* v. *Deane,* 2 Show. 85.) But this is not a criminal prosecution; and the question is, whether a person having a right of possession, may not peaceably assert it, if he do not transgress the laws of his country. I think he may; for a person who has a right of entry may enter peaceably, and being in possession, may retain it, and plead that it is his soil and freehold." And in the same case, Judge ASHURST, a " careful expounder of the law," said,—" No person who has a right of entry into lands can be considered as a trespasser for asserting that right, unless it be attended with such acts of violence as will subject him to a criminal prosecution."

BULLER and GROSE, Judges, concurred.

In *Taunton* v. *Costar,* 7 Term Rep. 432, the head note is,—"A tenant, holding over after the expiration of his term, cannot distrain his landlord's cattle, which were put upon the premises by way of taking possession."

In this case, Lord KENYON says,—" The case is too plain for argument. Here is a tenant from year to year, whose term expired upon a proper notice to quit; and because he holds over in defiance of law and justice, he now attempts to convert the lawful entry of his landlord into a trespass. If an action of trespass had been brought, it is clear that the landlord could have justified under the plea of *liberum tenementum.* If indeed the landlord had entered with a strong hand to dispossess the tenant by force, he might have been indicted for a forcible entry; but there can be no doubt of his right to enter upon the land at the expiration of the term. There is not the slightest pretence for considering him as a trespasser in this case."

And again, Lord KENYON remarked, in *Argent* v. *Durrant,* 8 T. R. 403,—" In trespass, the defendant pleaded not guilty; and if he might

give in evidence that at the time of the trespass the freehold was in such a one, and he, as his servant and by his command, entered, was the question : and it was said, by Coke, that the same might so be well enough,"—citing 1 Leon. 301.

And see to the same effect *Dodd* v. *Kyffin*, 7 Term Rep. 354 ; *Bartholomew* v. *Ireland*, Andrews 108.

In Gilbert's Ev. 258 it is said,—" In trespass, on not guilty, the defendant may give in evidence that the right of freehold was in J. S., and that he by his command entered ; for if the defendant entered by the command of J. S., it is the same as if J. S. entered, and consequently, if J. S. hath the right, the estate is vested in him by the entry, and consequently the defendant is no trespasser on the plaintiff."

In *Harvey* v. *Brydges*, 14 M. & W. 437, PARKE, B., lays down the law in these terms : " Where a breach of the peace has been committed by a freeholder, who, in order to get possession of his land, assaults a person wrongfully holding possession of it against his will, although the freeholder may be responsible to the public in the shape of an indictment for a forcible entry, he is not liable to the other party. I cannot see how it is possible to doubt that it is a perfectly good justification, that the plaintiff was in possession of the land against the will of the defendant, who was the owner, and that he entered upon it accordingly, even though in so doing a breach of the peace was committed." ALDERSON, B., concurred.

And this doctrine has been fully confirmed in *Blades* v. *Higgs*, 10 C. B. N. S. 713. See, also, *Pollen* v. *Brewer*, 7 C. B. N. S. 371 ; *Davison* v. *Wilson*, 11 Ad. and E. N. S. 890 (63 Eng. Com. Law) ; *Burling* v. *Read*, 11 Ad. and E. N. S. 905 ; *Davis* v. *Burrell*, 10 C. B. 821 ; *Patrick* v. *Colerick*, 3 M. & W. 483.

The result of English authority then is, that an entry by the landlord with force is illegal only to the extent of the penalties provided by the statutes of forcible entry and detainer, or other criminal process, and that no right of common law action by the tenant is to be inferred from the statutory prohibition.

If we turn now to the American cases, we shall find the law, as indicated by the English authorities, even more strongly and unequivocally maintained. Such is the purport of the decisions, without disturbance of the current, setting in one direction, in the States of Massachusetts, New York, Pennsylvania, North Carolina, South Carolina, New Jersey, Kentucky, Missouri, and probably in some other jurisdictions. And in our own State, although the subject does not seem to have been largely discussed (perhaps because the principle has been regarded as too firmly established to admit of serious question), the authorities point unmistakably in the same direction. See *Wilde* v. *Cantillon*, 1 Johns. Cas. 123 ; *Hyatt* v. *Wood*, 4 Johns. 150 ; *The People* v. *Leonard*, 11 Johns. 504; *Ives* v. *Ives*, 13 Johns. 235 ; *Jackson* v. *Morse*, 16 Johns. 197 ; *Erwin* v. *Olmstead*, 7 Cow. 229 ; *Jackson* v. *Farmer*, 9 Wend. 201 ; *The People* v. *Van Nostrand*, 9 Wend. 50 ; *Livingstone* v. *Tanner*, 14 N. Y. 64 ; *The People* v. *Field*, 52 Barb. 198 ; S. C. 1 Lansing

242; *Kellam* v. *Janson*, 17 Pa. St. 467; *Zell* v. *Ream*, 31 Pa. St. 304;
*Overdeen* v. *Lewis*, 1 W. & S. 90; *Johnson* v. *Hannahan*, 1 Strob. 313;
*Walton* v. *File*, 1 Dev. & B. 567; *Tribble* v. *Frame*, 7 J. J. Marsh. 599;
*Beecher* v. *Parmele*, 9 Vt. 352; *Yale* v. *Seely*, 15 Vt. 221; *Hodgeden*
v. *Hubbard*, 18 Vt. 504; *Mussey* v. *Scott*, 32 Vt. 82; *Todd* v. *Jackson*,
2 Dutch. 525; *Krevet* v. *Meyer*, 24 Mo. 107; *Fuhr* v. *Dean*, 26 Mo.
116; *Rawson* v. *Morse*, 4 Pick. 127; *Sampson* v. *Henry*, 13 Pick. 36;
*Meader* v. *Stone*, 7 Met. 171; *Miner* v. *Stevens*, 1 Cush. 485; *Mugford*
v. *Richardson*, 6 Allen 76; *Hilbourne* v. *Fogg*, 99 Mass. 11; *Curtis* v.
*Galvin*, 1 Allen 215; *Moore* v. *Mason*, *ib.* 406; *Winter* v. *Stevens*, 9
Allen 526; *Merriam* v. *Willis*, 10 Allen 118; *Pratt* v. *Farmer*, *ib.* 519;
*Morrill* v. *De la Granja*, 99 Mass. 383; *Brown* v. *Cram*, 1 N. H. 169;
*Kingsbury* v. *Pond*, 3 N. H. 511; *Ferrin* v. *Symonds*, 11 N. H. 365;
*Chellis* v. *Stearns*, 22 N. H. 315; *Forsyth* v. *Morse*, Rockingham, June,
1870, not yet reported;—and see Taylor's Landlord and Tenant, sec.
782; 1 Washb. R. P. 540, 541.

In *Hyatt* v. *Wood*, 4 Johns. 150, it is held that " if a person, having a
legal right of entry on land, enters *by force*, though he may be indicted
for a breach of the peace, yet he is not liable to a private action of
trespass for damages at the suit of the person who has no right, and is
turned out of possession," SPENCER, J., saying,—" It may be laid
down as an axiom, that no man can recover upon a claim of right to
property against another, whose rights to the subject-matter are su-
perior to those of the person so claiming damages for a violation of
his supposed rights.   At common law, and prior to the statutes to pre-
vent forcible entries, wherever a right of entry existed, the disseisee
might lawfully regain the possession by force. (2 Hawk. P. C., ch. 64.)
In a case bearing analogy to the present, of personal property, the
right of recaption exists, with the caution that it be not exercised riot-
ously, or by a breach of the peace; for should these accompany the
act, the party would then be answerable criminally; but the riot or
force would not confer a right on a person who had none, nor would
they subject the owner of the chattel to a restoration of it to one who
was not the owner."

Hawkins, cited above, is thus (2 P. C., ch. 64, p. 29): " He who is
wrongfully dispossessed of his goods, may justify the retaking of them
by force from the wrong-doer, if he refuse to redeliver them; for the
violence which happens through the resistance of the wrongful pos-
sessor, being originally owing to his own fault, gives him no just cause
of complaint, inasmuch as he might have prevented it by doing as he
ought."

In *Jackson* v. *Farmer*, 9 Wend. 201, NELSON, J., after declaring the
principle as asserted in *Hyatt* v. *Wood*, and affirmed in *Ives* v. *Ives*,
says,—" This position, apparently harsh, and tending to the public dis-
turbance and individual conflict, is abundantly supported by authority,
and must be considered the law of the land,"—citing 3 Bl. Com. 5, 174;
1 Hawk. 274; 7 T. R. 43, &c., &c.   He continues: " It was the
abuse of this summary power to right one's self by entry, where the

right of entry existed, which gave rise to the numerous English stat-
utes against forcible entry and detainer, of which our old act was sub-
stantially a copy ; and in these acts and the common law remedy by
indictment are to be found the only protection of the party thus forci-
bly dispossessed.   They punish certainly the ·force, and in some cases
make restitution of the possession, but so far as the civil remedy is
concerned, there is none but what is afforded by those acts."

The New York Revised Statutes provide that no entry shall be
made into any lands or other possessions, but in cases where entry is
given by law ; and in such case in a peaceable manner, not with a
strong hand or multitude of people."   Commenting upon this statute,
MORGAN, J., in the very recent case of *The People* v. *Fields*, 1 Lans.
242, says,—" In some few cases judges have advanced the doctrine
that any entry, even by the person entitled to the possession, is unlaw-
ful, if made against the will of the party in possession.   Such a view of
the statute is clearly contrary to the decisions of our own courts, and
to the policy of the law (see 1 Washb. R. P. 540).   Our statutes do
not interfere with the common law right of justifying, in an action of
trespass *quare clausum fregit*, even a forcible entry."

The Vermont cases may seem to be somewhat conflicting. In *Beecher*
v. *Parmele*, 9 Vt. 352, REDFIELD, J., says,—" It is now well settled that
an intruder * * in quiet possession of land, * * may be forcibly
expelled by the owner, * * so far as the land is concerned.   If the
owner is guilty of a breach of the peace and trespass on the person of
the intruder, he is liable for that, *but his possession is lawful;*" and tres-
pass was held not to lie against him.   And to the same effect is *Yale*
v. *Seely*, 15 Vt. 221, and *Hodgeden* v. *Hubbard*, 18 Vt. 504.

But in *Dustin* v. *Cowdry*, 23 Vt. 631, the court held a different doc-
trine, placing the decision upon the authority of the then recent deci-
sions of *Newton* v. *Harland*, 1 M. & G. 644, and *Hillary* v. *Gay*, 6
C. & P. 284, the court, after a full consideration of these cases, re-
marking,—" This is the latest declaration of the courts of Westminster
Hall upon this subject. * * We have no disposition to add anything
in regard to the true construction of law as derived from the decisions
of the courts of Westminster Hall, and we think the decisions of the
English courts as to the common law or the construction of ancient
statutes are to be regarded of paramount authority."

Now, concerning these English cases,—*Hillary* v. *Gay* and *Newton*
v. *Harland* (the only two English cases which seem to be in opposition
to the otherwise uniform current of English authority),—it is sufficient
to· remark that, in the latter case, ALDERSON, B., dissenting from the
opinion of the majority of the court, denied the authority of the former
*nisi prius* decision, which was subsequently disowned in *Harvey* v.
*Brydges*, 14 M. & W. 437 ; that the authority of *Newton* v. *Harland* was
" much questioned " by CRESWELL, J., in *Davis* v. *Burrell*, 10 C. B. 825.;
substantially overruled in *Pollen* v. *Brewer*, 7 C. B. N. S. 373 (opinion
by EARLE, C. J.) ; and that the supposed authority of both cases, shaken
.as we have seen by the subsequent English cases, was expressly rejected

in the comparatively recent case of *Blades* v. *Higgs*, 10 C. B. N. S. 713.

And, therefore, regardful still, and properly so, of the "paramount authority" of the English decisions as to the common law, the court in Vermont came at last to the conclusion, in *Mussey* v. *Scott*, before referred to, that where a landlord, having a right of entry, violently broke into the premises during the temporary absence of the tenant, he was considered nevertheless to have acquired a lawful possession thereby, which he might defend by force against the tenant; thereby substantially overruling its previous decision in *Dustin* v. *Cowdry.* If the court in Vermont has in a still more recent case (*Whittaker* v. *Perry*, 38 Vt. 107) reäffirmed the doctrine of *Dustin* v. *Cowdry*, its respect for the authority of Westminster Hall would seem to be diminished, unless, as it occurs to us, the earlier and later cases in that State may, upon a careful examination of the facts in the several cases, be found, after all, not to be seriously conflicting, nor, upon the whole, opposed to the general course of English and American authority.   So it will be found on examination that some of the earlier Massachusetts decisions are founded upon the supposed authority of the exploded cases of *Hillary* v. *Gay* and *Newton* v. *Harland;* while the later cases in that State are in full accordance with the modern doctrine.

Perhaps this remark applies only to the first reported case of *Sampson* v. *Henry*, 11 Pick. 379, where Mr. Justice WILDE lays down the broad proposition that "the law does not allow any one to break the peace and forcibly to redress his private wrongs.   He may make use of force to defend his lawful possession; but, being dispossessed, he has no right to recover possession by force and by a breach-of the peace"—a proposition not very objectionable in the abstract, but which is not always to be received in its unrestricted terms and without qualification.   It was a mere dictum of the learned judge, not called for by the case, which was trespass for an assault, in which the defendant claimed the right, as stated in the opinion of the court, "not only of breaking open the house and entering therein with force and violence, but also of committing an assault with a dangerous weapon;" and the real purport and substance of the decision is all that the case called for, namely, that inasmuch as improper force was used, trespass for an assault lay. In the same case, 13 Pick. 36, it was expressly held that trespass *quare clausum* did not lie.

In *Miner* v. *Stevens*, 1 Cush. 482, Judge WILDE cites with approval those English and New York cases which hold that possession may be regained by force, and that trespass *quare clausum* will not lie in such a case, and declares this to be the law of Massachusetts, notwithstanding the statute against forcible entry and detainer.   To the same effect is *Curtis* v. *Galvin*, 1 Allen 215, and *Moore* v. *Mason*, *ib.* 406, in both which cases the entry was forcible; and in *Winter* v. *Stevens*, 9 Allen 526, where the entry was made by the owner, accompanied by five men, the tenant being ejected by force, BIGELOW, C. J., says the tenant "was liable to be ejected by force, if it was used reasonably, without

committing a breach of the peace, and was not disproportionate to the exigency."

In *Meader* v. *Stone*, 7 Met. 151, where the defendant broke out a pane of glass, unfastened the window on the inside, and effected an entrance, and then carried off doors and windows, the tenant being in actual possession, SHAW, C. J., says,—" However such entry by force might subject the landlord to penalties for a breach of the law criminally, it confers no right of action on the tenant thus holding without any right of possession." To the same general tenor and effect are all the Massachusetts cases before referred to.

In the cases cited from the Missouri Reports, it is held that although the ousted tenant may, in some cases, have a remedy by statutory process of restitution, he cannot maintain trespass against the landlord.

In *Brown* v. *Cram*, 1 N. H. 171, it is held that a mortgagor in possession is merely the tenant at sufferance of the mortgagee, who, unless expressly restrained by the provisions of the deed, may at his pleasure enter and thereby put an end to such tenancy, BELL, J., saying,—" It was contended on the part of the defendant that the mortgagee, under whom the plaintiffs claim, entered forcibly and unlawfully ; but it is unnecessary to determine that fact, for it is clear that if a person having a right of possession resort to force to obtain possession, the law considers such possession as rightful, although it will punish him in a criminal prosecution for the violation of the public peace by which he obtained it,"—citing *Taunton* v. *Costar* and *Hyatt* v. *Wood*. To the same effect is *Chellis* v. *Stearns*, before cited.

The English case, *Blades* v. *Higgs*, 10 C. B. N. S. 713, bears a stronger resemblance to the present case than does any other that has fallen under our observation, and, because of its pertinency to the present discussion, we quote the opinion by EARLE, C. J., in full,—premising that counsel, in argument, had reviewed at length the English decisions to which reference has now been made :—" The declaration in this case was for an assault and battery. The substance of the justification was, that the plaintiff, having wrongfully in his possession rabbits belonging to the defendants (we consider the servants here the same as the master), and being about to carry them away, the defendants requested him to refrain, and, on his refusal, *molliter manus imposuerunt*, and used no more force than was necessary to take the rabbits from him. To this the plaintiff has demurred, and thereby admits that he was doing the wrong, and that the defendants were maintaining the right, as alleged ; and he contends that the defendants are not justified in using necessary force, on account of the danger to the public peace ; but he adduces no authority to support his contention. The defendants, likewise, have failed to adduce any case where the justification was supported without an allegation to explain how the plaintiff took the property of the defendant and became the holder thereof. But the principles of law are in our judgment decisive to show that the plea is good, although that allegation is not made. If the defendants had actual possession of the chattels, and the plaintiff took them from

them against their will, it is not disputed that the defendants might justify using the force sufficient to defend their right and retake the chattels; and we think there is no substantial distinction between that case and the present; for, if the defendants were the owners of the chattels, and entitled to the possession of them, and the plaintiff wrongfully detained them from them after request, the defendants, in law, would have the possession, and the plaintiff's wrongful detention against the request of the defendants would be the same violation of the right of property as the taking of the chattels out of the actual possession of the owner.

" It has been decided that the owner of land entitled to the possession may enter thereon and use force sufficient to remove a wrong-doer therefrom.

" In respect of land, as well as chattels, the wrong-doers have argued that they ought to be allowed to keep what they are wrongfully holding, and that the owner cannot use force to defend his property, but must bring his action, lest the peace should be endangered if force was justified. See *Newton* v. *Harland*, 1 M. & G. 644. But in respect of land, that argument has been overruled in *Harvey* v. *Brydges*, 14 M. & W. 442. [The learned judge then repeats the language of PARKE, B., already quoted in this opinion.]

" In our opinion, all that is so said of the right of property in land applies, in principle, to a right of property in a chattel, and supports the present justification. If the owner was compellable by law to seek redress by action for a violation of his right of property, the remedy would be often worse than the mischief, and the law would aggravate the injury instead of redressing it. For these reasons, our judgment is for the defendants."

And see Hilliard on Remedies for Torts 207; 2 Selw. N. P. 1328; 4 Bouv. Inst. 37; Taylor's L. & T., sec. 782, where it is said,—"As to a tenant at will, or by sufferance, although he may maintain trespass against a wrong-doer, he cannot against his landlord, even if violently dispossessed; for an entry by the landlord determines his tenancy."

Prof. Washburn (1 Real Prop. *395–*397) reviews at some length the English and American cases, remarking that " the law, as generally adopted in the United States, may be assumed to be substantially as laid down by Baron PARKE" in *Harvey* v. *Brydges;* and sums up as follows : " Upon a review of all these cases, the weight of authority seems to be in favor of the common law right of the owner of land to recover possession of his premises by force, of which another is wrongfully in possession, provided no more is employed than becomes necessary by the resistance interposed by the tenant to prevent his regaining possession peaceably, especially if his entry be peaceable."

And·to this conclusion we are inclined to subscribe, regarding it as founded upon reason as well as authority.

We think it will be found, upon a careful examination of the cases, that the opposite conclusion, reached by some judges in earlier times, rests mainly upon a ground not available in this State, namely, that

the statutes of forcible entry and detainer have by implication super-seded and forbidden the summary remedy afforded and justified by the common law.

Since the repeal of our statute forbidding forcible entries, no such implication can be suggested by the plaintiff here. On the contrary, the argument, if any is to be drawn from the repeal of the statute, would seem to be, that the rights of parties to redress by entry is to be regarded as sustained by the principles of the common law.

With regard to the second and third counts, which charge an assault merely, without alleging a breaking of the plaintiff's close, if the plaintiff's possession was unlawful, and the defendant had the right of possession, it follows, upon the principles before stated, that either by reason of license, express or implied, or by force of the defendant's right of possession of the chattels, the defendant, having entered upon the premises, would be justified in taking by force, if necessary, the property improperly withholden, and in resisting, by force sufficient for the purpose, the attempted retention of the property by the plaintiff or his wife.

The circumstances of the present case, however, are much stronger in favor of the defendant's justification than those of any case to which we have adverted by way of illustration and analogy.

The demurrer admits that the plaintiff, having been removed from office, had no right to retain the custody of the property belonging to the government; that Gilchrist, having been appointed to the office, had the right to the custody and control of the property; that it was necessary, in order to the removal of the property to the new post-office, that Gilchrist should avail himself of the assistance of his servant, the defendant.

The property was wrongfully detained by the plaintiff. It was *public* property. The plaintiff was but the custodian and agent of the government, holding the public property by the mere acquiescence of the government, whose prohibition of such retention of the property and right of supreme control is indicated by the appointment of Gilchrist as its agent in the place of the plaintiff. Says BELL, J., in *Chellis* v. *Stearns*, "It is on the presumed assent of the mortgagee that the mortgagor shall occupy the premises * * so long as the mortgagee acquiesces, without any entry or prohibition, that it is held no action of trespass can be maintained for such occupation."

Gilchrist was the agent of the government and the representative of the public, asserting the rights of his principals, as he was bound to do. His authority was not a mere incident to his office, nor an implication from public necessity, but it was expressly conferred by the same statutes which prescribe the duties of the retiring postmaster.

"Every postmaster shall keep an office in which one or more persons shall attend on every day on which a mail shall arrive, * * for the purpose of performing the duties thereof; and it shall be the duty of the postmaster, at all seasonable hours, on every day of the week, to deliver, on demand, any letter, paper, or packet to the person entitled to, or authorized to receive, the same." 4 U. S. Stat. 105.

" Every postmaster shall keep a record, in his office, of all postage-stamps and envelopes, and of all postal books, blanks, or property received from his predecessor in office, or from the post-office department, or from any of its agents, &c., &c. ; and these records shall be preserved and delivered over to his successor in office," &c., &c.   12 U. S. Stat. 702, Act of March 3, 1863, sec. 4.

The postmaster-general is authorized to make all needful rules and regulations for the conduct of the postal service of the country,—5 U. S. Stat. 80 ; and these regulations have the force and effect of positive law.   *United States* v. *Roberts*, 9 How. 501.

Gilchrist had been appointed postmaster, and, as well as the defendant, his assistant, had taken the oath of office ; and it is to be presumed that they had complied with all the requirements of law pertaining to their official duties and rights.   *United States* v. *Bachelder*, 2 Gall. 15 ; *Ronkendorff* v. *Taylor*, 4 Pet. 349.   No particular form of removal of a postmaster is prescribed.   If the incumbent have notice that he has been removed and another appointed, and the appointing power in fact make such appointment and recognize the appointee as the legal officer, it is sufficient.   *Ex parte Hennen*, 13 Pet. 230.

Upon the appointment of a postmaster and the execution of his bond, taking the oath of office and receiving his commission (all which formalities are to be presumed from the fact that he acts in an official character, with the recognition of the proper department—*Ronkendorff* v. *Taylor*, before cited), " he is authorized to take charge of the office." Reg. of the P. O. Dept. (promulgated March 1, 1866), sec. 2.

" All instructions, circulars, and orders received by a postmaster from any officer of the department, are to be filed in the office and turned over to his successor.   In like manner he will turn over to his successor   *   *   as public property, all desks, cases, and other furniture and fixtures, and all books, maps, blanks, stationery, and other articles which have either been furnished to him as postmaster, or have been charged and allowed at any time, and which may remain on hand when the vacancy or discontinuance occurs."   Regulations, sec. 31.

It is apparent, therefore, that Gilchrist and his agent had the right by law to demand and receive this property, and that the defendant, by refusal to deliver it on demand, became a wrong-doer.

This action is trespass *quare clausum*.   The gist of the action is the violation of the plaintiff's possession.   If the defendant was justified in entering on the premises, the suit cannot be maintained.   *Wendell* v. *Johnson*, 8 N. H. 222.   The plaintiff must prove such a lawful possession as the defendant has no right to disturb.   *Inhabitants of Dunstable* v. *Thacher*, 3 Met. 242.

The defendant entered for a lawful purpose upon premises to which the public at all seasonable times had the right of access.

The postmaster, the defendant, was required by law to keep an office for the accommodation of, and open to, the public.   Although the title to the land may have been in the plaintiff, the post-office department was dedicated by him to public uses, as required by law, and " was then

and there being used solely and exclusively for the purposes and business of [a] post-office." It was, *pro tempore*, not the plaintiff's close ; but it was a public place, and, by the very nature of the business to which it was appropriated, every person having official transactions with the acting postmaster, or who has any interest in the property under his charge, is, in legal contemplation, licensed to go into the office. *Burnett* v. *The State*, 30 Ala. 19 ; 1 Bishop Crim. Law, sec. 316. The post-office establishment is created for public convenience, and the government, by its agents, " have the management and control of the whole concern." Story's Bailments, sec. 462.

The entry of the defendant, then, as the servant of Gilchrist, being warranted by law and attended with no unnecessary force, was not a trespass. 2 Selw. N. P. 1328.

In a case like the present, it would seem that considerations of public policy, not to say necessity, do not require that a postmaster should be compelled to resort to the dilatory process of a mandamus, or an information in the nature of a *quo warranto*, in order to obtain the custody of public property to the retention of which the plaintiff had no pretence of right.

Our conclusion is that the plaintiff's justification is good, and

*The demurrer must be overruled.*